## Case of a Turnpike Road by Chad's Ford to the State Line.

*Philadelphia,
Saturday,
April 3.*

THIS was a *Certiorari* to the Quarter Sessions of *Delaware* county, to remove all proceedings on the application of *Samuel Davis* and *Owen Rhoades*, to have adjudged the damages occasioned to them by laying out through their land respectively, a turnpike road from *Philadelphia* by *Chad's Ford*, on *Brandywine*, to the line of the state in the direction towards *Baltimore*.

By the record it appeared, that the petition of *Davis* and *Rhoades* was presented to the Quarter Sessions of *Delaware* in *January* 1811, under the act of the 24th of *March* 1808, incorporating this turnpike company, and which by reference embraced the following provision, contained in the 10th section of the Spring House and *Bethlehem* Turnpike Act;
" that if the said road shall be laid out upon any land, whereby the owner thereof shall suffer damage, the person or
" persons sustaining such damage, may make application to
" the Court of the county in which such damage is sustained;
" and thereupon the Court shall appoint *six disinterested persons to view and adjudge the amount of the damage so
" done*, which if approved of by the Court, shall be paid by
" the company."

*Where several persons are authorised to do a private act, they must all join; but where they are authorised to do an act of a public nature, which requires deliberation, though all should be convened, a majority may decide. Hence, where an act of assembly provided, that if a certain turnpike road should be laid out upon any land, whereby the owner should suffer damage, he might apply to the County Court, who should appoint six disinterested persons to view and adjudge the amount of the damage so done, which, if approved by the Court, should be paid by the Turnpike Company, it was held, that if the whole number viewed, five might adjudge the damage.*

*Upon a certiorari to remove proceedings in a road cause, this Court will hear evidence to shew that all the viewers attended the view, if the record does not state the contrary, and no exception to the non-attendance of any of the viewers was taken below.*

*Unless it appears upon the record, that the damage viewed and adjudged was done out of the county in which the proceedings were had, this Court will presume that it was done within the county, and that the Court below had jurisdiction.*

1813.

BALTIMORE
TURNPIKE.

At the same term the Court appointed *six* viewers, *five* of whom reported that they had viewed the road, and adjudged the damages of *Davis* at 358 dollars, and of *Rhoades* at 100 dollars.

One exception taken here, was that five only of the six viewers, viewed and adjudged.

*Ross*, for the petitioners, offered a deposition taken under a conditional rule, to prove that six attended, though five only adjudged.

*B. Tilghman* and *Frazer* opposed it, upon the ground that the record was unambiguous. This Court, they said, must take the fact to be as it appeared, and to admit the evidence, was to examine into the merits.

PER CURIAM. It does not appear clearly by the record whether six viewed or not. Nor does it appear that any such exception was taken below. It is proper, therefore, to inquire into that fact, because it is consistent with the record, if it should turn out that six viewed, and only five reported. This is not an inquiry into the merits.

The deposition proving that the whole number viewed, the remainder of this exception was alone insisted on, viz. that five had adjudged. Another exception was, that the land of the petitioners did not appear to be within the jurisdiction of the Court; but it was not pressed.

*B. Tilghman* and *Frazer* on behalf of the exception argued, that as these proceedings originated under a special statute, affecting the property of individuals, the authority must be, and on the face of the record, must appear to have been, strictly pursued; and especially as it was a private authority, in relation to private rights. They instanced in the case of commissions to take testimony, as in *Burton* v. *Soltock* (a); of submissions to arbitrators, *Green* v. *Miller* (b); of authorities given to justices of the peace, *Chittinston* v. *Penhurst* (c), *Dawson* v. *Alberti* (d), *The Queen* v. *West* (e); and in a case analogous to the present, of commissioners to

(a) 1 *Bulstr.* 105.          (c) 2 *Salk.* 474.          (e) 6 *Mod.* 180.
(b) 6 *Johns.* 39.            (d) 1 *Binn.* 135.

assess damages by running a turnpike road through private lands. *Gilbert* v. *The Columbia Turnpike Company* (a). The law intended that the same number who viewed should adjudge; and as it cannot be contended that any one may be absent from the view, so the whole number must adjudge. It is a sufficiently small number, since it is in derogation of trial by jury, where unanimity is essential.

*Ross* contra. This is an authority of a public nature, which concerns the whole of that part of the state through which the road passes, and which in its exercise requires judgment and deliberation. In such cases, though all must deliberate, a majority may decide. *Co. Litt.* 181. Nor is there any instance to the contrary, except in the solitary case of a petty jury, the result of a peculiar policy, and not of any general principle. *Dyer* 218. 1 *H. P. C.* 297. To require unanimity, is to defeat the law. It cannot be enforced by keeping the viewers together, as in the case of a jury; it cannot be compelled by *mandamus*, because it is not a ministerial act. The only question is, whether the law is for a private purpose, or for public advantage; if for the latter, there cannot be a doubt. All the opposite cases apply to private authorities, or to special powers granted for private purposes.

TILGHMAN. C. J. The principal error assigned in this case, is, that six persons were appointed by the Court to view the road, and adjudge the damages, and only five of them joined in the report. The act of Assembly directs, that the person sustaining damage by the laying out of the the road, may make application to the Court of the county in which such damage is sustained, and thereupon " the " Court shall appoint six disinterested persons, to view and " adjudge the amount of the damages so done, which, if " approved by the Court, shall be paid by the company."

It may be material to ascertain in the first place, whether all the six persons appointed by the Court, met and viewed the land. The report is made by five of them, and it is contended on the part of the Turnpike Company, that this Court must take for granted, that no more than five met and viewed, because there is no mention of more in the

(a) 3 *Johns. Ca.* 107.

record. They consider the proceedings brought up under the *certiorari*, precisely in the same point of view as proceedings returned under a writ of error, in which the Court will not look out of the record. But it has not been the practice of this Court to confine themselves so strictly to the record, on removals of the proceedings of the Courts of Quarter Sessions, in cases relating to roads. This appears by the 19th rule of the Court in which it is declared, that they will inquire into " fraud or undue practice in the " viewers or parties, which the party complaining of such " fraud or undue practice, had not neglected to make appear " to the Court below." No exception was taken in the court below to the non-attendance of one of the viewers. If it had, we know that they would have inquired into that matter, because it does not appear by the report, that the whole six did *not attend.* An averment that they all attended, is consistent with the record, and if we should refuse to inquire into it, pernicious consequences might ensue. It has been usual for those who make the report, to say nothing about the attendance of the others. In such cases, if the objection is made in the court below, it may immediately be obviated, by an inquiry which will bring out the truth. But if *this Court* are precluded from inquiry, nothing more is necessary than to remove the proceedings by *certiorari*, when they must be quashed, contrary to the truth and justice of the case. I think it consistent with the spirit of our rule to make this inquiry, and we find by the deposition which has been filed, that all six of the persons appointed, actually met and viewed the road, as was confessed in the court below.

It has been objected, that the Court of Quarter Sessions had no jurisdiction, because it does not appear on the record, that the place where the damage was done, is in the county of *Delaware.* No objection was taken in that court to want of jurisdiction. It does not appear that the place is out of their jurisdiction, and therefore we ought to suppose that it is within it.

The only point of serious difficulty, is, that the act requires six persons to view and adjudge the damages. Six viewed, but five only adjudged. It is conceded, that where several persons are authorised to do a *private* act, they must all join, because unless the contrary is expressed, the intent of the person granting the authority must have been that it

1813.

BALTIMORE
TURNPIKE.

should be the joint act of all. It is conceded too, that when several persons are authorised to do an act of a public nature, which requires deliberation, they all should be *convened*, because the advice and opinions of all may be useful, though all do not unite in opinion. But it is contended, and as it appears to me, with great reason, that although all must attend, a decision may be made by the voice of a majority. It is said by Lord *Coke*, 1 *Inst.* 181 *b*, that a liberal construction shall be given to *powers* concerning the administration of justice, which is *pro bono publico;* he instances the case of a sheriff, who gives a warrant to three persons jointly or severally to arrest another, the warrant may be executed by *two.* So if a *venire facias* is awarded to four coroners to impannel and return a jury, and one die, the survivors may execute and return the same. The reverse of this would have been the law in matters of a private nature. The cases put by Lord *Coke* are by no means so strong as those of a *deliberative* nature. In matters purely ministerial, there is no difficulty in procuring the concurrence of all, because there is nothing concerning which they can differ. But where the judgment is to be exercised, the inconvenience of requiring unanimity may be extreme. I recollect no public body in which unanimity is required, but a petit jury. If trial by jury were to be now instituted, it might be doubtful, whether good reasons could be assigned for insisting on an unanimous verdict in *civil cases.* But we revere it for its high antiquity, and it is certain that in ancient times, the jury were so rigidly restricted from meat and drink, as to prevent the inconvenience which we now sometimes experience from want of unanimity. There is a great difference however, between a jury who are kept together under the eye and authority of the Court, and those persons who are appointed to view a road, and adjudge the damages. If unanimity is required, and one should happen to differ from the rest, what is to be done? If it were a ministerial act, they might all be compelled to join in it by *mandamus.* But a *mandamus* has no control over the *mind*, and therefore would be inapplicable to the case. Is the party sustaining damage then to go without compensation? Or are the Court to appoint other persons; and how often may they appoint them? The act of Assembly makes no provision for such new appointments, not having contemplated a state of things

1813.

BALTIMORE
TURNPIKE.

in which it would be necessary. In the organization of courts of justice, where a certain number of judges are authorised to hold a court, it is understood that a majority may decide. So in commissions of Oyer and Terminer, and other matters of a similar nature. The same construction is given to powers vested in corporations. Cases have been cited, to shew that special powers vested in justices of the peace, acting out of court, must be strictly pursued. But these cases are not applicable to the proceedings in the General Quarter Sessions. The principle on which the present case rests, has never, to my knowledge, been decided by this Court. But from analogy to the law laid down by Lord *Coke*, from its great convenience, and the great inconvenience of the contrary doctrine, I feel myself warranted in saying, that according to the true construction of the act of Assembly, it is sufficient if a *majority* of the persons appointed by the Court of Quarter Sessions concur in adjudging the damages. I am therefore of opinion, that the proceedings should be affirmed.

YEATES J. was prevented by sickness from giving any opinion.

BRACKENRIDGE J. concurred with the Chief Justice.

Proceedings confirmed.