## WELLS v. SCOTT.

January 9, 1836.

*Rule to show cause why the award of arbitrators should not be set aside.*

A cause is referred under the act of the 20th of March 1810; the three arbitrators are duly qualified, meet, and hear the plaintiff's testimony; one of the arbitrators then leaves the state, without any definite purpose to return; the plaintiff requests the *two* remaining to substitute another in the place of the one thus absent, which they decline to do, but, under protest of the defendant, proceed to hear the whole case, and make an award. *Held:* 1. That the award is good, until reversed upon *appeal.* 2. Even if these proceedings could be construed erroneous, they do not constitute irregularity which will render the award *null*, so as to enable the court to set aside the award. They are assignable for error only in a court of error.

IN this case the plaintiff entered a rule of reference under the compulsory arbitration act of 1810; and having complied with the requisitions of the act in regard to notice to the adverse party, three arbitrators were duly chosen, and a day appointed for their meeting. All the arbitrators attended accordingly, and were sworn or affirmed; and the parties, by their counsel, being present, the plaintiff's statement of his complaint, and his evidence in support of it, were heard by the *three* arbitrators. In this stage of the proceedings, the arbitrators adjourned to a particular day named, at which time both parties appeared personally, or by counsel, but only *two* of the arbitrators met; and it was then ascertained that the *third* arbitrator had left the state, without an intention, as was believed, of returning. Under these circumstances, the plaintiff requested the remaining arbitrators to supply the place of the absentee by a new appointment; but this being objected to by the defendant, was declined. The plaintiff then suggested to these arbitrators the propriety of their continuing together, and hearing the parties, precisely as if the third arbitrator were also present. Upon deliberation, the two arbitrators acquiesced in this suggestion, and announced their determination accordingly to the parties. To this course the defendant objected also, and presented a written protest against it to the arbitrators, who made a minute to this effect, and annexed it to the award which they subsequently made. After the defendant's protest had been thus recorded, he adduced his evidence before the two arbitrators, and the parties on both sides having been fully heard, an award was made

[Wells v. Scott.]

for the plaintiff, and duly filed with the prothonotary. Shortly afterwards the defendant applied to this court, and obtained a *rule nisi for setting the award aside*; and subsequently, and within the time allowed for this purpose by the act of assembly, he took an appeal.

*J. M. Scott*, for the rule, contended, 1. That from the time one of the arbitrators left the state, the proceeding was *coram non judice*; that the other two had no power to proceed. 2. That the powers of arbitrators are given wholly by act of assembly, which requires that the whole number should hear and deliberate, though a majority may make an award.

*J. M. Read, contra*, argued, 1. That the entry of the appeal is a waiver of all objections to the award. 2. That the act of assembly empowers a *majority* of the arbitrators to proceed, as in this case.

Authorities cited : Act of 20th of March 1810, *Purd. Dig., tit. Arbitration;* Sheetz v. Rudebaugh, 2 *Rawle's Rep.* 150 ; Baltimore Turnpike, 5 *Binn.* 481 ; Harding v. Watts, 15 *East* 559 ; M'Kinstry v. Solomons, 2 *Johns. Rep.* 57 ; Douglass v. Kenton, *ante* 21 ; Dundas v. Bladen, 4 *Rawle's Rep.* 463 ; Grindley v. Barker, 1 *Bos. & Pul.* 236 ; Ex parte Rogers, 7 *Cowen* 526 ; Rex v. Grimes, 5 *Burr.* 2601; Rex v. Varlo, *Cowp.* 250 ; Rex. v. Monday, *Ibid.* 537 ; The King v. Bellringer, 4 *D. & E.* 813 ; M'Inroy v. Benedict, 11 *Johns. Rep.* 402 ; 2 *Kent's Comm.* 248 ; *Angel & Ames* 505 ; Thompson v. White, 4 *Serg. & Rawle* 140.

JONES, J. (after stating the facts).—The provisions of the act of the 20th of March 1810 regulating arbitrations, are in part applicable to the cause while it remains in court, and are directory to the court or its officers, and in part they are referable to the cause after it has been committed to the arbitrators, and their jurisdiction has attached, and therefore are directory to them. So far as they relate to the cause while it is in court, they are subject to the construction of the court in the first instance, and if the parties or the officers of the court proceed irregularly, the court may correct the irregularity in a summary way.

But those provisions of the act which relate to the proceeding in the cause after it is out of court and before the arbitrators, are for their consideration and construction. They have all the powers ne-

cessary for hearing and deciding without the interference and control of the court.  Like any other tribunal, they are competent to decide all questions touching their organization, after due notice of their appointment, or their competency as a forum, subject however to correction if they proceed erroneously.  In this case, two of the arbitrators, duly convened, have decided that they have power to proceed with the cause, (the hearing of it having been commenced) notwithstanding the absence of their colleague.  Having previously decided that they would not appoint another, they in effect had decided that his place was not vacant, and having decided that they would proceed, they virtually decided little more than that the absence of their colleague was not a cause for adjournment.  If they erred in judgment, it was merely error, not an irregularity which would render their award null.  The principle in 5 *Binn.* 481, relied on by the defendant, is not applicable to this question, it being merely a question of construction of the act directing their proceedings.  Besides, the powers of the arbitrators are rather in the nature of a jurisdiction, than of a mere authority, such as those referred to in 5 *Binn.* 481.  The point then is, whether we can interfere in the way proposed by this rule.  We think we cannot, without taking cognizance of matters assignable for error only in a court of error.  As this award does not appear to us to be void, either wholly or in part, this opinion is not at variance with the case of Sheetz *v.* Rudebaugh in 2 *Rawle's Rep.* 150.

But if the question were properly cognizable in this court, we should say the award is binding, until reversed upon an appeal.

The basis of the act is the proceeding by way of arbitration at common law.  The act is entitled an act *regulating arbitrations*, that is, an act not devising an entirely new system of proceeding, but regulating and changing, in some respect, and for some purposes, a proceeding previously known.

In the 2d section of the act, the common law distinction between an *arbitrator* and an *umpire* is assumed, in order to make it the foundation of the provisions directing the mode of choosing them. The section first provides for the choice of two, four or six arbitrators, as the parties may agree or the prothonotary direct, and then, in a distinct clause, it provides a method for appointing *the umpire.*  The words are : " in case the parties agree in the choice *of arbitrators,* as above directed, *the umpire* shall be chosen in the manner following," &c.  The inference is inevitable, that one of the arbitrators

[Wells v. Scott.]

sustains the character and office of an *umpire,* both as it respects the parties and his colleagues. According to the act, the person last appointed (pursuing the method pointed out by the act) is the umpire. But, by other expressions in the same section and in the 4th section, it is obvious that he is not merely an umpire. He is so far an arbitrator, that it is proper for him to take part in the cause from the commencement of the hearing; and for that purpose it is necessary that he should be appointed at the time the cause is referred. This is not the course of proceeding in arbitrations at common law. Harding *v.* Watts, 15 *East* 559 ; M'Kinstry *v.* Solomons, 2 *Johns. Rep.* 57.

Still, having designated him as *the umpire,* the legislature indicated, very clearly, the nature of his functions. In the decision, therefore, of interlocutory questions occurring during the hearing, as well as in the final decision of the cause, he acts in the character of an umpire. If his colleagues agree, his action is unnecessary. If they disagree, the decision is an act of umpirage; Boyer *v.* Aurand, 2 *Watts* 74 ; and not merely a casting vote.

To apply this construction to the case under consideration. The two persons first appointed in this case were properly and merely arbitrators. The person last appointed (*if* the method of the act was pursued) was, in a general and in the popular sense, an arbitrator, and as an arbitrator, entered with his colleagues upon the hearing of the cause, and took part in their proceedings and deliberations.

But his proper and peculiar, and if I may use the expression, active functions, were those of an umpire ; and his intervention was indispensable only at the points of difference between his colleagues, (if there were any) occurring during the cause, or at its conclusion. It does not appear whether the absentee in this case was the umpire. If this were a matter of importance, we could not defeat the award by a presumption. Kemble *v.* Saunders, 10 *Serg. & Rawle* 193, 194. But the fact is not important ; for if the absentee was the umpire, the concurrence of the arbitrators shows that there was no occasion for his interference. If otherwise, the award was the act of the umpire, and made at a time and place duly appointed for making it, under circumstances in which it was impossible that there should be a decision without him.

Under the act of 1810, it is not necessary that the time appointed for making the award should elapse before the umpire can decide.

It may be objected that this opinion is founded upon a literal con-

[Wells v. Scott.]

struction of the act.    Be it so.    The construction of the defendant would render the act abortive in this case, after the trouble and expense of an arbitration has been incurred, and thereby defeat the intention of the legislature, which was to facilitate trials and diminish the expense of them ; and certainly it is more just to invoke the aid of common law principles to further that intention of the act, than to defeat it.    It is usual for courts to depart, in some degree, from the letter of an act, to secure its obvious intent, but not to do so for the purpose of defeating it.

As a collateral argument, we may add that, by the 6th and 26th sections of the act, the persons appointed arbitrators are obliged under penalty to serve upon at least ten trials during a year.    In a long cause, where many meetings have been had, it would be unreasonable to require two of the arbitrators, where they are unanimous, to commence the cause anew on account of the necessary or wilful absence of their colleague.    Yet this must be done, or all that has been done be lost, unless the arbitrators have power to proceed.    In one cause now depending in this court, the arbitrators were occupied, it is said, during seventy-nine days, and the cost taxed upon the appeal amounted to more than 420 dollars.    In many cases much time is consumed and great expense is incurred before the trial is concluded.    On the score of justice to the arbitrators, and of justice, convenience and economy to the parties, it is better that the act should be construed liberally.

It may also be objected, that according to this principle if the absentee were one of the arbitrators, the umpire might make a good award against the consent of the other arbitrator.    Such is the law ; and it is better so, than that the proceeding should be suspended indefinitely.    The parties may appeal, and if it is wrong reverse it.  This is an advantage which they have not in case of umpirage at common law.

It may also be objected that this construction would put it in the power of the umpire to decide the cause in the absence of the other arbitrators, on the day first appointed for the hearing, and before they have been organized.    But this is not so.    The office of an umpire implies the previous action of the arbitrators, and the want of concurrence between them.

The case of Douglass against Kenton (*ante p.* 21), decided at the last June term, was similar to this.    In both cases the defendant contended that the two arbitrators had no power to supply the place

I.—R

of the absent arbitrator, nor to proceed in the cause without him ; and when application was made to this court to strike off the rule of reference, the defendant also denied the power of the court to inter-fere.   Their jurisdiction having been divested, and transferred to the arbitrators, the court in that case asserted their power to in-terfere whenever the two arbitrators should determine that they could not or would not proceed to exercise the power vested in them by the act, or it should become inpossible for them to do so.    At the same time it was decided that the court had no power to direct them how they should proceed.    Allusion was made also to those parts of the act referred to in this case, as furnishing a clue to its construction.

These cases show the propriety of giving effect to the full import of every part of the act in aid of its intention.   Certainly it is our duty to do so, before we come to the conclusion that the system devised by the legislature is defective.

The rule in this case must be discharged.

PETTIT, *President*, concurred.

STROUD, J. (after recapitulating the facts).—The objection to this award is, that it was not competent to the two arbitrators to proceed in the case in the absence of the third, and under the circumstances stated.    The plaintiff's counsel, in reply, relies upon two grounds. 1. That the entry of the appeal is a *waiver* of all objections to the award.    2. That the act of assembly empowers a *majority* of the arbitrators to proceed, as was done in this case, and that therefore their award is good.

With respect to the *waiver*, it is to be remarked, that in Dundas *v.* Bladen, 4 *Rawle* 463, which was brought originally in the supreme court, a similar state of facts existed, so far as concerns the *entry of the appeal*, and yet the award was set aside.    It is true, in that case, this objection does not appear to have been taken ; yet it was too obvious to have escaped the attention of the court, and I therefore consider myself at liberty, if not bound, to infer that it was deemed insufficient.    Besides which, after the party had made a written pro-test, it would seem to me unwarrantable, in a matter of doubt, like the present, where no decision could be referred to as a guide, and where the consequences of a withdrawal from the hearing might have been so greatly and irreparably injurious, (for the party might not have been able to procure bail, or pay the costs, sometimes

[Wells v. Scott.]

amounting to a very large amount, on the appeal) to infer acquiescence, in the face of an unequivocal written declaration to the contrary.

The main question is therefore to be examined : "does the act of assembly authorize a *majority* of the arbitrators, in the absence of one of their number, and against the will of one of the parties, to continue the hearing of a cause partially proceeded in before the whole number, and to render an award against the dissenting party?"

The precise question here stated has never been decided. An intimation of an opinion upon it was cautiously thrown out in the decision of Douglass *v.* Kenton ; but the question itself was, at the same time, declared to be "open for discussion." Having been counsel for the plaintiff in that cause, I did not sit upon the argument, and of course took no part in the decision. Nor had I, as counsel, been led to investigate this question, as the difficulty which induced the application to the court had not reached its crisis when my connection with the case ceased ; and, furthermore, (and but for this consideration, I should not deem it proper for me on the present occasion to express an opinion) it is ascertained that this question cannot arise in Douglass *v.* Kenton.

Before I proceed to the examination of the act of assembly, it may be well to notice certain general principles of law applicable to the doctrine of *authorities*.

1. In the words of lord Coke, "there is a diversity between *authorities* created by the party for private causes, and *authorities* created by law for the execution of justice." And he thus illustrates this proposition : "if a man make a letter of attorney to *two*, to do any act, the *survivor* shall *not* do it ; but if a *venire facias* be awarded to four coroners to empannel a jury, and one of them die, yet the others shall execute the same." *Co. Litt.* 181, *b.* The latter clause of his proposition, as well as the illustration, shows that he had in view authorities of a *ministerial* character.

2. In regard to authorities of a public nature created by law, there is a difference when the duties required are *ministerial*, and when they are *deliberative*. We have seen that in respect to *ministerial* duties, where the authority is conferred on several, the survivors (and it might be added, survivor) may act with perfect legality. But it is further to be noted, in *this kind* of authority, that all who are *alive* must concur in the performance. But in authorities of a

[Wells v. Scott.]

public nature, when the duties are *deliberative*, though all must convene and confer together, yet a *majority* may decide.    Case of Baltimore Turnpike, 5 *Binn.* 485 ;   Grindley *v.* Barker, 1 *Bos. & Pul.* 236 ; Ex parte Rogers, 7 *Cowen* 526.    In general, the law which creates such authorities, *expressly* empowers a *majority*, or *other definite proportion* of the whole body, to act with the same effect as the whole.    The number legally requisite to perform the duties appropriate to such authorities, whether it be the entire body, a majority, or other fixed proportion, constitutes the *quorum* ;  and, not to pursue this investigation unnecessarily into all its distinctions, it may be stated as the result of all the cases having any bearing on this particular inquiry, that in authorities of public concern, created by law, the appropriate duties of which are of a *deliberative* character, the *quorum* must be convened, and confer together, although a majority, in case of disagreement, may decide.    See, besides the cases above referred to, Rex *v.* Grimes, 5 *Burr.* 2601 ;   Rex *v.* Varlo, *Cowp.* 250; Rex *v.* Monday, *Ibid.* 537 ;  The King *v.* Bellringer, 4 *D. & E.* 813.

The only matter to be ascertained then, is, what number constitutes a *quorum* of arbitrators, under the act of 1810.

By the 2d section, the number to compose an arbitration, must be three, five, or seven.    The remainder of this section, and the three following sections, direct the mode by which the selection of the arbitrators is to be made.    They are to be residents of the county where the action is pending, according to the 6th section.    The 7th section provides for the fixing of a time and place for the meeting.    In the 8th, particular directions are given as to the manner of notifying the arbitrators, &c., when and where they are to meet.    The 9th and 18th sections authorize the appointment of suitable persons to supply the place of those who, having been originally chosen and duly notified, neglect to attend at the proper time and place.    The number being thus complete, their duties and powers are minutely detailed in the 10th section, which, from its important bearing, it will be fit to give with very little abridgement.    " The arbitrators thus appointed, and *met*, shall be sworn or affirmed," &c. &c. ;  and they being *all* thus sworn or affirmed, " justly and equitably to try all matters in variance submitted to them, either of them shall have power to administer oaths or affirmations to such persons called before them, as they, or a *majority* of them, shall believe to be proper, disinterested and competent witnesses, as well as to judge of the credibility of their testimony, and the propriety of admitting in evi-

[Wells v. Scott.]

dence any written document that may be produced; and to call on either party to produce any books, papers or documents, that they shall deem material to the cause; and likewise to decide the law and the fact that may be involved in the cause to them submitted. And, *moreover,* the said arbitrators, or a majority of them that are present, shall have full power to adjourn their meetings from day to day, or for a longer time, and also from place to place, if they think proper; and if both parties appear, either by themselves, their attorneys or agents, before *the arbitrators,* on the first, or any subsequent day of meeting, &c., *the arbitrators* shall proceed to investigate, examine and decide the cause, &c., to them submitted, and report their determination, and make out an award, signed by all, or a majority of them, and transmit the same to the prothonotary within seven days after they have agreed upon their report," &c.

The purport of this section to my mind, is exceedingly plain. In order to supply vacancies, by the 9th and 18th sections, as already noticed, such arbitrators as should attend, in compliance with the notice served upon them, were empowered, without oath or affirmation, to elect, in certain contingencies, their colleagues; and the whole number, being thus appointed and met, are all to be sworn or affirmed to try the matter submitted to them. Questions arising in the course of the trial, such as the competency of witnesses, calls for the productions of papers, and in short the whole law and fact involved in the cause, may be decided by a majority of them; and to make the power of the arbitrators, if possible, more free from doubt, and as showing conclusively that nothing less than the complete number were deemed competent to perform the duties required of the tribunal, the substance of what had been before mentioned, is repeated thus: "and if both parties do appear before *the arbitrators,* &c., *the arbitrators* shall proceed to investigate, examine and decide the cause to them submitted, and report their determination, and make out an award signed by all or a *majority* of them." Precisely this, and nothing less or more would have been the implied powers of such a tribunal, had the act been silent on the subject. The whole number must have met and heard the evidence, &c., i. e. have proceeded to investigate the cause; and the *decision*—the *award* might then have been made by a *majority.* It was supposed by the plaintiff's counsel, that the language, "and, moreover, the said arbitrators, or a *majority of them that are present,* shall have full power to adjourn their meetings from day to day, &c.," evidences that by *majority* in

other parts of the section, is meant a majority of those present: because, if I understood the argument, it is not made the *duty* of those assembled, though less than the entire number, to adjourn; but it is left to their *discretion* by the words "if they think proper." These words however, according to my view of them, are *restricted* to a power of changing *the place* of meeting. On the construction claimed, should *three* only be present, or indeed but one, although the whole number appointed were *seven*, it would be competent for two, in the first place, and one in the other, to proceed in the investigation, and make a binding award. It is plain, however, that this language furnishes no ground for such a conclusion. This clause is, indeed, thrown in *parenthetically*: most probably it formed no part of the section as first reported, but was deemed necessary to meet the contingency of a part of the arbitrators only attending at a meeting subsequent to that at which they had been organized; and, regarded in this light, it strengthens the argument which requires the presence of the whole number, in order to proceed in the hearing of the parties.

But this investigation may be advantageously prosecuted a little further. Enactments subsequent to the act of 1810, and in title or subject supplementary to it, corroborate the views which I have expresed. The act of the 28th of March 1820 (*Purd. Dig.*) provides a mode of supplying vacancies in the original number of the arbitrators occasioned by *death*; a work quite unnecessary, at least until the survivors, where these amount to a majority of the whole number primarily appointed, have, by experiment, ascertained that they could not agree. And the "act relating to proceedings in the action of account render," passed March 30, 1821, (*Purd. Dig. tit. Arb.*) which extends the arbitration act of 1810 and its supplements to the action of account render, expressly declares, "that *the arbitrators* appointed by virtue thereof, (i. e. of those acts) *shall* HEAR, and a *majority* of them determine on the whole merits of the cause, and report," &c. These acts being in *pari materia*, are to be construed together; and can it be contended, that on points perfectly analogous, the legislative intent is so widely different?

In the state of New York, a statute, which appears so far as concerns the particular point under investigation to bear a very close analogy to our arbitration act, has received a construction which fully supports the view which I have taken. The decision may be found in M'Inroy *v.* Benedict, 11 *Johns. Rep.* 402.

[Wells v. Scott.]

On the whole, my opinion is, that by abandoning the state, the place of the arbitrator became vacant to all intents and purposes. For, as before remarked, the 6th section of the act requires the arbitrators to be residents of the county where the action is pending. I am also of opinion, that by such abandonment of the arbitrator, the tribunal, of which he was a constituent member, became dissolved, and consequently, the award made by the two remaining arbitrators was a nullity, and must be set aside. I infer the dissolution of the arbitration from the analogy of this tribunal to municipal corporations, in regard to which the doctrine is well established, that when an integral part of the corporation is gone, without whose existence the functions of the corporation cannot be exercised, and *when the corporation has no means of supplying that integral part, and has become incapable of acting*, the corporation becomes then virtually dead or extinguished. 2 *Kent's Comm.* 248; *Angel & Ames* 505.

It remains to be examined whether it is competent to this court to set aside the award.

On general principles, I regard this point free from doubt, and happily, we have the express decision of the supreme court, not only that we have the power, but that it is our duty to interpose, provided the circumstances of the case require revision. In Thompson *v.* White, 4 *Serg. & Rawle* 140, Chief Justice Tilghman uses this language: "the appeal seems to have been the only remedy immediately contemplated by the legislature. Nevertheless, as the award was to have the effect of a judgment, *it has been decided that a writ of error would lie on it, in consequence of which it might be revised for errors appearing on the face of the proceedings.*" And in Sheetz *v.* Rudebaugh, 2 *Rawle* 149, Huston, J., delivering the unanimous opinion of the court, says: "many cases have occurred in this court, which have induced the court to reconsider the decisions as to the practice under this law [arbitration act of 1810]; and on mature and frequent reflection, we have come to the conclusion, that in the cases in which *writs of error* have been taken to reconsider, and if wrong reverse, reports of arbitrators under the compulsory arbitration act, the court in which the cause was pending, and to which the report was made, *is the proper tribunal* to obtain [grant] redress. When appeal is the proper remedy, the party must appeal; but in those cases where writ of error has been resorted to, *the application is hereafter to be made to the court of common pleas.*"

In the case before us, the error does appear *on the face of the pro-*

[Wells v. Scott.]

*ceedings,* and therefore *a writ of error* would lie upon the record, according to Thompson *v.* White ; and wherever a writ of error might be resorted to, it is declared in Sheetz *v.* Rudebaugh, that " the court in which the cause was pending, and to which the report was made, is the proper tribunal to grant redress." Even if I disappoved of this doctrine, I should nevertheless deem it an unquestionable duty to conform to it. But in my judgment, the doctrine is sound. It concerns the community that suits should be brought to a termination with as little delay as possible. It is the right of the injured party, in each particular case, to demand that this should be done. The language of the constitution is emphatic on this head. The act of assembly constituting this court, enjoins the making of " such regulations of practice as may *most* facilitate the progress of justice," a direction, it is true, not in strictness adapted to the present inquiry, but in its *spirit* fully comprehending it. I feel myself therefore constrained to say, that the rule to set the award aside should be made absolute.

Rule discharged.(*a*)

(*a*) See act of the 16th of June 1836, sect. 22.