Parker, C. J
Two questions arising in this case are important m a commercial point of view, and deserve a deliberate eration.
[ * 56 ] * The first question respects the title of the plaintiffs *57 under their bill of sale, of the 3d of February. It was made in good faith, and upon a valuable consideration ; and, if the authority of Robert Lamb was sufficient to convey the interest of his partner, their title would be good against any creditor of the house. For, although the vessel was then abroad, so that a delivery could not take place, it is well settled, by a number of decisions in this country and in England, that such a conveyance, by deed, of a vessel at sea, passes the property ; it being only necessary that possession should be taken under the conveyance as soon as the vessel returns within the control of the purchaser.
With respect to the authority of Robert Lamb, to sell his partner’s interest, it cannot result merely from his being a part-owner of the vessel ; for part-owners are only tenants in common, and one of them cannot, by his sole act, transfer the property of another, unless under circumstances which furnish a presumption of an assent by him who does not join in the conveyance. Nor is any stress to be laid upon the general power of attorney held by Robert Lamb from his partner ; for it cannot be supposed that such a power, from an absent partner, could be left to be used about the partnership concerns or property. The object of it probably was, the care of the private concerns of Maynard in his absence.
The authority, then, which Robert Lamb had, to convey the interest of his partner in the vessel, must result from their relation as general partners ; and we think this sufficient.
There would probably be no doubt of the power of one partner to dispose of any other partnership effects. Such a power seems necessarily to result from the connexion.
One is frequently absent; and in such case the other must have the whole authority of both, or the business would stop. One may con tract debts for the house, or may release and discharge debts ; may purchase merchandise or vessels, if the nature of their business requires it; may draw or indorse bills of exchange, and make or indorse * promissory notes. Indeed, there seems to be [*57 ] scarcely an act contemplated to be done by merchants, which one copartner, acting for both, cannot do as effectually, to bind the whole copartnership, as if each member acted.
This is laid down expressly by Watson, the only writer who has treated distinctly and separately upon the subject of partnerships : and there is no book of legal authority denying his positions.
The only room, then, for question, is, upon the distinction suggested between vessels and merchandise or other effects of a partnership. The superior importance, generally, of this species of property, and the greater solemnity commonly practised in conveying it, has given some weight to this suggestion, and has caused us to hesitate upon this point.
*58 But, upon full consideration, we see no ground for supporting it. Vessels owned by a copartnership are certainly effects of the co-partnership, and, not unfrequently, the principal effects. Occasion for selling them frequently arises in the course of business : and, notwithstanding they are commonly conveyed by an instrument under seal, they may pass bv delivery only, as well as any other chattel, so far as respects the property of the vessel.† No exception from the general authority of a partner, relative to partnership effects, can be found in favor of vessels ; and there seems to be no reason for such exception. Each partner, acting fairly and without fraud, has the authority of the whole firm; and it would tend much to embarrass mercantile business, if this were not the case ; as one of the principal objects of uniting in a commercial copartnership is, the facility of transacting business in different places, frequently at great distance from each other, at the same time.
No one can doubt that a contract, made by one partner to sell a ship belonging to the firm, would be binding upon the firm, so as to subject it to damages if the contract should not be performed. And there seems to be no reason why the same thing may not be done, which may be contracted to be done.
' *58] * We think, then, that Robert Lamb, in the absence of his partner, had authority to sell the moiety of the brig, as part of the partnership effects, and, so far, the title of the plaintiffs is made out.
But it is necessary to compare it with the title of the defendant, and to see which has the preference.
The same authority, which, by virtue of the copartnership, was vested in Robert Lamb, was also possessed by his partner, Maynard.
The title, therefore, of the defendant, under his conveyance from Maynard, is valid, unless the title of Maynard & Lamb had been before divested by the bill of sale to the plaintiffs, which was prior in point of time. But the sale to the plaintiffs, although absolute in its terms, was not complete and perfect, for want of a delivery of the vessel. All the writers upon the subject of the transfer of a ship at sea speak of a subsequent possession within a reasonable time, as necessary to complete the transfer, at least with respect to creditors.
And in the case m our own books of The Portland Bank vs. Stubbs & al.,(1) it was decided, that, when a ship at sea is transferred, the purchaser takes her subject to all incumbrances upon her before notice of the transfer. This doctrine seems to be reasonable, and necessary to secure the interests of persons abroad, who may *59 have lawfully acquired a lien upon the ship, and who can have no means of knowing any thing done to affect the title by an owner at home after the sailing of the ship.
Thus, if the vessel should be hypothecated abroad after a sale of her at home, the hypothecation would take place of the sale. So, if she should be chartered or let to freight by the master or supercargo, having authority, the transfer at home must be subject to these charges upon the vessel abroad.
In the case at bar, the brig Louisa was at St. Croix on the 21st of February, eighteen days after the transfer made * by Robert Lamb, having on board Maynard, being part- [*59] owner and general partner with the other part-owner, and also consignee of the vessel; he with his partner owning a moiety of the vessel. A creditor of the partners, hearing of the difficulty of the house, presses for payment, and has it in his power to arrest the vessel to secure his demand. A third party, at the request of the partner, purchases the vessel and pays the debt; and immediately the vessel is delivered to the purchaser, who sends her to sea as his own property, and causes her to be documented in his own name. At this time no knowledge exists in any of the parties to the transaction that the partner at home had conveyed the vessel.
Here we think a complete and perfect title is obtained, and that it necessarily intercepts the title attempted to be passed by the conveyance from Robert Lamb. Under such circumstances, there could be no doubt that Maynard might have mortgaged the moiety of the brig to Thomas Durant for the security of his debt, and that such mortgage would have preference over the sale by Robert Lamb. It would be an incumbrance upon the vessel legally made abroad, to which the sale at home must be subject, according to the principle laid down in the case of The Portland Bank vs. Stubbs al. And, if a mortgage would have this effect, no reason can be given why an absolute sale, made for the purpose of paying a partnership debt, and relieving the vessel from detention, should rest upon different principles.
We are, therefore, of opinion, that the title of the whole vessel was legally in the defendant; so that no action lies for the plaintiffs for the proceeds of the sale, or for the earnings of the vessel.
Let the plaintiffs become nonsuit.†

 Taggard vs. Loring, 16 Mass. Rep. 336. — Oliver vs Greene, 3 Mass. Rep. 133 — Bartlett vs. Walter, 13 Mass. Rep. 137. — Sed vide Ogle vs. Eagle Ins. Co., 4 Maron, 390.

 6 Mass. R$p. 422.

 Lanfear vs Sumner, 17 Mass. Rep. 110. — Gardner vs. Howland & Tr.,2 Pick. 599 — Braden vs Gardner, 4 Pick. 456. — Hodges vs. Harris, 6 Pick. 360.— Butterfield vs. Baker, 5 Pick. 552.— Flagg vs. Dryden. 7 Pick 52. — Shumway vs. Rutter, 7 Pick. 56. — Blake vs. Williams & Tr., 6 Pick. 286. — Vide Dickinson vs Legare al., 1 Dessaus. 537. — Harrison vs. Sterry, 5 Cranch, 289.
But queers, whether the decision of the above case does not militate with the general principle, that, where two titles are in all other respects equally valid, “ qui prior est tempore potior estjure." Much of the argument of the Court in giving judgment in Lanfeeu *60 vs. Sumner, ub. sup., proceeded on a misapplication of the rules of the civil law, without reference to the well-known distinction between that and the common law. By the former, delivery is, in general, essential to a complete title in the vendee ; but, by the latter, the title of the vendee is, in general, complete on the completion of the contract of sale. Brown, Sales, 4,7 - 9, 11 -24, 28. — Baker vs Lloyd, Bul. N. P. 258. But in those cases in the civil law where delivery is not essential to the vesting of a title in the vendee, and in all cases in the common law, the maxim above mentioned applies. Voet. ad. Pand., Lib. 6, Tit. 1, Sec. 20, Pas. ult. — 1, Chitty on Plead 5th ed., p. 381. — 2 Chitty, p. 56.