Tilghman C. J.,
This is an action of covenant, brought by the plaintiff below, (William Lecky,) against the Commis *167 sioners of Allegheny County, to recover a sum of money agreed to be paid by the defendants, for a .lot of ground in the city of Pittsburgh. The agreement was under the public seal of the commissioners, and signed by two of them. The third commissioner did not assent to the agreement, and therefore did not sign it. The errors assigned, may be reduced to two heads. 1st,. Were the commissioners authorised by law to make this purchase i 2d, If they were authorised, did they act'in such a manner as to pursue their authority ?
1, By an act of assembly; made in the year 1724, the commissioners of the several counties had power to raise money for the building and repairing of court-houses, prisons, &c. It is supposed by the counsel for the defendants, that this act was either obsolete, or virtually repealed by the act “ to raise and collect county rates and levies,” passed the 11th April, 1799. It certainly was the intent of this last act, to reduce all the former acts on the subject of county rates and levies, into one. system, but there is no express repeal of the act of 1724, nor do I think it necessary, on the present, occasion, to decide, whether it was repealed or not. But considering the great length of time during which it has been the practice to authorise the building of jails, by special act of assembly, it certainly is very doubtful, whether, without such special authority, the power Of purchasing ground and building’a new jail, now exists. Taking for granted, however, for the purpose of the présent argument, that a special act of assembly is necessary, it is to be considered, whether the act “ to authorise the commissioners of Allegheny county to sell and convey part of a lot of ground in the city of Pittsburgh &c., passed the 26th February, 1817, be hot sufficient to justify the commissioners in making this pur-, chase ? By this act, the commissioners are authorised and empowered, to sell and dispose of, by public sale, &c., “. all that part of a lot of ground in the city of Pittsburgh whereon the common jail of Allegheny county now stands,'.together with such jail, and t.o make a good and sufficient de.ed or deeds, in fee simple, to the purchaser or purchasers thereof, and the monies arising from such■ sale or sales, shall be, by the said commissioner s, applied to the purchase of another lot of ground in the said city, or its vicinity, and to the erection of a jail thereon, and the said.commissioners shall, for *168 the faithful expenditure of the same, account to the auditors of the said county., in the same manner as they are by lam ■ obliged to account, for the expenditure of all other public monies.” Now, although no authority is given, in express terms, to purchase another lot and build a new jail, yet it is given by necessary implication.. For how can the proceeds of sale of the present jail, and the lot on which it stands, be applied to the purchase of other ground, and the erection of anew jail, unless-such other ground be purchased, and such new jail erected? It has been said for the defendants, that this ‘ being a special authority, it- should be construed- strictly. On the contrary, I think, that the object being to' grant power to do a work- beneficial to the county of Allegheny, the act of assembly should be construed liberally, for the attainment of its object; viz., the erection of a new jail, for that was the ultimate object,, to which the selling of the present jail was only an accessary. Indeed, the counsel for the defendants, were so sensible of this, that in order to avoid the force of the plaintiff’s argument, they did not deny the intent of this act of' assembly to be, that other ground, should be purchased, and another jail erected, but contended, that there was no intent to vest the power of making the purchase, and erecting the building, in the commissioners only, inasmuch, as by an act passed 4th April, 1807, that power was given to the commissioners, in conjunction with the grand jury, and the Court of Quarter Sessions. Had that been the case, the defendants would have had strong ground to stand on; because then, the implication of power to the commissioners only, by the act of 26th February, 18-17, would have been unnecessary, and it might have been injurious-to the county of Allegheny, • by depriving it pf the benefit of the assistance of the grand jury, and Court. But the act of ,4th April, 1807, confers no power at all applicable to the present case. It is entitled, “ A further supplement to the penal laws of. this State,” and in the 4th section, it is enacted, that “ if, by the report of the commissioners of any county to the Court of Quarter Sessions, it shall appear, that there is not sufficient room or conveniences, in and about the common jail of any county, for the employment and punishment of the convicts, it shall be the duty of such commissioners, with the consent and approbation pf the Court and grand jury of the proper county, to *169 cause to be erected such additional buildings as may be necessary for that purpose, and if need be, to purchase ground proper and convenient for the erection of such additional buildings, at the expense of the proper county.”—It is evident at first glance, that this act has no bearing on the case before us, where, so far from an intention to erect additional buildings, the present jail was to be sold, and no longer remain the property of the county. I think it sufficiently clear, therefore, that the act of 26th February, 1817, gave authority to the commissioners to purchase ground for the erection of a new jail.
2. But it is insisted by the counsel for the defendants, that even granting that the act of assembly gave power to the commissioners to purchase ground for a new jail, yet the agreement made with the plaintiff is not warranted; and that, for three reasons. First, the commissioners were directed to sell the present jail, before they purchased other ground.— Second, because the authority vested in the commissioners, whatever it was, was given to all three of them, and therefore, could not be executed by two.—Third, because the contract between the plaintiff and defendants, ought to have contained a stipulation pledging the proceeds of sale of the present jail, for the payment for the ground purchased of the plaintiff.
Let us consider these objections.—1. The words of the act are, “ that the monies arising from the sale, shall be applied to the purchase of another lot of ground.” Now if it were impossible to make such application, without selling the present jail before the other lot was purchased, there would be something in the defendants’ argument. But nothing could be more easy than to make the application requirc.d by the law, though the present jail was sold first. Morey might perhaps have been borrowed on the credit of the county, to he repaid when the sale should be made._ Or even if it were levied by tax, it might be refunded when the sale was made, which would be substantially a compliance with the law; and in all probability, a great gain to the county; because, by the county all the money necessary for the erection of the new jail, beyond the proceeds of sale of the present jail, was to be paid; and therefore, it was for the interest of the county, that the present jail should be sold on such terms as would bring the highest price. Now, *170 as possession could not be delivered until the new jail was-finished and the prisoners removed to it, no one can doubt that the best price would be obtained by deferring the sale until the new jail was erected. We are not to suppose that these considerations escaped the Legislature, and therefore, it would be perverting the spirit of the law to tie it down to the strict construction contended for by the defendants ;— to compel the commissioners to a disadvantageous mode of sale, merely to comply with the letter of the law, when its real object might be attained on better terms. I cannot think therefore, that the defendants are right in their first objection.
2. When powers a.re granted to several persons to transact private business, the rule is, that all must join in the execution of the power. But this rule was never applied to public business of a judicial nature, nor to public business of a deliberative nature, though not strictly judicial; nor to cases where powers are given to corporate bodies.—In the case of the Baltimore Turnpike, (5 Binn. 481,) the power to assess damages was vested in six persons, and it was decided by this Court, that the whole number having viewed the road, five only might assess the damages. In the present instance, it cannot be said that the business is judicial, though it is of a public nature. But the commissioners are certainly to be viewed in a very different light from private individuals. If not strictly a corporation, they have several qualities of a body corporate. By the act of 11th April, 1799, sect. 26, they are authorised to have a common seal, and by the same act, sect. 15, they, or any two of them, shall form a board in each county. It cannot be denied, that this hoard has power to transact the ordinary business intrusted to the commissioners, except in cases where it is ordained to the contrary. And although the business now in question is not the ordinary business of the county, yet when the Legislature gives certain powers touching the public business of the county to the commissioners, by the general, oficial name of commissioners, it must be supposed, that such powers were to be exécuted by the Board. Indeed, this seems so very plain, that I think it could not have been contested, were it not, that in several acts of assembly cited on this occasion, powers were given to the commissioners, or a majority of them. But this is a matter of no great weight. The words, “ or a majority of *171 them,” are but surplusage, and we know very well, that ex abundanti cautela, expressions are often introduced, which are altogether unnecessary.—I have no doubt therefore, of the power of a board of commissioners consisting of two, to act in this business.
3. There is nothing in the third point.—If the commissioners had not power to bind the county for the payment of this money, the plaintiff cannot recover. Bat if they had such power, it could not be necessary to' stipulate that the purchase money should be paid from any particular fund. Having already expressed my opinion, that the commissioners had power to bind the county, it follows that the stipulation was unnecessary.
Upon the whole, I am of opinion, that there is no error in this record, and therefore, the judgment of the Court of Common Pleas should be affirmed.
Judgment affirmed.