# Cooper and Grove *against* Lampeter Township.

One supervisor cannot bind the township for the performance of a contract, the propriety of entering into which was the subject of deliberation and the exercise of judgment; it requires the action and assent of both. Hence a contract entered into by one for the erection of wing-walls to a bridge, which had been built by the county, cannot be enforced by action against the township.

|  |  |
|---|---|
| 8 w 125 | 151 481 |
| 8 w 125 | 167 72 |
| 8 W | 125 |
| 21 SC | 116 |
| 8 W | 125 |
| 31 SC | 359 |
| 31 SC | 361 |
| 31 SC | 363 |
| 8 W | 125 |
| f 34 SC | 549 |

ERROR to the district court of *Lancaster* county.

Mark Cooper and Benjamin Grove against the Township of Lampeter. This was an action on the case in *assumpsit* for work, labour and services, and materials found in the erection of the wing-walls of a bridge. The case was this: The county of Lancaster, in pursuance of the provisions of the act of assembly, had entered into a contract with the present plaintiffs for the erection of a bridge across a stream, which was too expensive for the adjoining townships to bear. After the bridge had been erected, Abraham Buckwalter, one of the supervisors of Lampeter township, and the one who had the superintendance of the duties in that part of the township, entered into a written contract with the plaintiffs for the extension of the wing-walls of the bridge beyond what they were bound to do by their contract with the county. John Rohrer, the

[Cooper and Grove v. Lampeter Township.]

other supervisor, was not consulted on the subject; and, so far as he gave any opinion about the propriety of entering into the contract, he was opposed to it.

The only question in the case was, whether one supervisor had power to enter into the contract so as to bind the township for the payment.

The court below (Hays, president) was of opinion, and so instructed the jury, that the plaintiffs were not entitled to recover.

*Frazier* and *Parke*, for plaintiffs in error, contended that the question involved depended upon the construction of the act of assembly relating to counties and township officers; and that the general principle of law, applicable to the performance of duties by two or more, requiring a majority to act, was not applicable to this case. The duties of supervisors are so various and peculiar, and so often required upon a sudden emergency, as to render it impracticable to have the consultation and joint action of both supervisors. The law certainly does not contemplate it. The custom of dividing townships between the two supervisors, allotting to each his half, for the purpose of limiting his duties, is co-extensive with the state, and universal; and it cannot be supposed that the legislature intended an innovation upon this, so useful a custom. It is difficult to perceive the difference between the repair or improvement of a road, and the repair or improvement of a bridge: one does not require more judgment than the other, and often not more expense. And if the law requires the act of both supervisors to create an obligation upon the township to pay for work actually done, it destroys the convenient arrangement, by which the services of each is separately devoted to the performance of duties which require their presence at so many points. They referred to the several sections of the act of 1833–4, to show that the legislature did not design to require the joint action of the two supervisors.

If there be any difference in the duties required of supervisors, it consists alone in assessing and levying taxes; in the business of taxation deliberation is required, and in this they must act together; and all other duties are merely ministerial, whether it be filling a hole in the road or building a wing-wall of a bridge.

*Lightner* and *Montgomery*, for defendant in error, contended that there was no ambiguity in the act of assembly, that throughout its whole scope, wherever powers were given, or duties enjoined, it was upon the supervisors, and there was no room for any other construction than that which required the deliberation, consultation and joint action of them both. If it be conceded that the business of taxation requires their joint action, it follows from necessity that the object to which the taxes are to be applied requires

[Cooper and Grove v. Lampeter Township.]

it also. It would be mockery to say, that one supervisor may create the expense, occasion the expenditure, and thereby pledge the faith of the township, and then to say, that the safety of the public consisted in this, that both must meet to assess and levy the taxes necessary to defray the expenses thus incurred. But in this case there was a peculiar necessity for the deliberation of the supervisors, in order to adjudge whether the expense was greater than the township was able to bear; and in fact this had already been passed upon, and a determination made that it was, and upon the proceeding regularly instituted and prosecuted the expense of erecting the bridge devolved upon the county.

If the act of assembly requires the action of the supervisors, then the act of one is not binding upon the township; 5 *Bin.* 484; 9 *Serg. & Rawle,* 94; 7 *Cowen,* 576; 6 *Serg. & Rawle,* 166; 4 *Serg. & Rawle,* 549; 12 *Mass. Rep.* 185; 1 *Rawle,* 448.

The opinion of the Court was delivered by

ROGERS, J.—The several counties and townships of this state have capacities, as bodies corporate, to sue and be sued by their corporate name, to take and hold real and personal estate within their respective limits, and to make such contracts, as may be necessary and proper, for the execution of the objects and purposes of the township or county. The corporate powers are to be exercised by the commissioners and supervisors thereof, respectively, who are constituted, by the act of the 15th of April 1834, their agents and organs for the transaction of business appertaining to them in their corporate capacity. The commissioners of the respective counties are placed on the same footing with the supervisors of the townships. The same corporate powers are given to each; and if one of two supervisors can bind a township, for the same reason, one of the commissioners can exercise the corporate powers of the county. In this view, independently of the point immediately presented by the record, this case is of very general importance; for it is of consequence to know the extent of the authority with which the law has clothed public functionaries of every description.

I will premise, that it never has been seriously contended, that one commissioner is vested with any authority to act without the express sanction of a majority of the board. So far as regards such officers this has been the construction, whatever difference of opinion there may have been as to the power of supervisors. Corporations, like natural persons, are bound only by the acts and contracts of their agents, done and made within the scope of their authority. And if the agent of a corporation make a contract beyond the limits of his authority, although he himself may be bound in the same manner as the agent of a natural person would be, yet the corporation is not bound. This has been held as to private corporations, and the same principles apply, with some limitations and restric-

tions, to corporations of a public nature. An improvident exercise of power, although it may affect the agents personally, yet furnishes no reason for an avoidance of the contract. The result is different when they clearly transcend their powers, for every person dealing with them is presumed to know the extent of their authority. A distinction has been taken in Wyman *v.* Hallowell and Augusta Bank, 12 *Mass. Rep.* 58, and Salem Bank *v.* Gloucester Bank, 17 *Mass. Rep.* 29, between the acts of an agent for his principal in common cases, and similar acts done by the servants or officers of a corporation. In the first case, it is said, the extent of the authority is known only between the principal and agent; whereas, in the latter, the authority is created by statute, or is matter of record in the books of the corporation, to which all may have access who have occasion to deal with the officers. However this may be, to the full extent there laid down, in a private corporation, yet every person is supposed to know the restrictions upon the power of the officers of a corporation of a public nature, and the extent of their authority. The agents of a body corporate can act only in the mode and to the extent prescribed by the law creating such corporation. So where power is granted to several persons to transact private business, the rule is, all must join in the execution of the power. But this rule is never applied to public business of a judicial nature, nor to public business of a deliberative nature, though not strictly judicial. Commissioners of Allegheny *v.* Leckey, 6 *Serg. & Rawle* 170. But when the business is public or private, less than a majority can not act without express power given by the principal, unless the act to be done is clearly ministerial. When the business requires deliberation, consultation and judgment, one of two or more agents can not do it without, or contrary to the consent of their associates. In 5 *Bin.* 485, it is conceded, that where several persons are authorized to do an act of a public nature, which requires deliberation, all should be convened; because the advice and opinions of all may be useful, though they do not, as is there said, unite in opinion. And in the same case, a clear distinction is taken between matters purely ministerial and those of a deliberative nature. By the twenty-first section of the act of 1834, it is made the duty of the supervisors to make and maintain sufficient bridges over all small creeks, and rivulets, and deep gullies, where the same shall be necessary for the ease and safety of the traveller. But in the twenty-first section it is enacted, that where a river, creek or rivulet, over which it may be necessary to erect a bridge, crosses a public road or highway, and the erecting of such bridge requires more expense than it is reasonable that one or two adjoining townships should bear, the courts, &c., shall, on the representation of the supervisors, or on the petition of any of the inhabitants of the respective townships, order a view, &c.; and if, on the report of the viewers, it shall appear to the court, grand jury and commissioners of the county that such bridge is necessary,

and would be too expensive for such township or townships, it shall be entered on record as a county bridge. The duty here enjoined is clearly deliberative. The supervisors must determine whether the creek, rivulet or gully is such as to require a bridge for the ease and safety of travellers. In the first instance, it is their duty to ascertain and determine whether the erection of such bridge requires more expense than it is reasonable one or two adjoining townships should bear; and this can only be done on deliberation and consultation, and with the express assent and consent of both supervisors; or, when it concerns the business of the county, by a majority of the board of commissioners. They must, in both cases, meet as a board, act as a board, for in no point of view can a duty of this description be considered as ministerial only.

It will hardly be pretended that one supervisor could authorise the erection of this bridge, without the consent of the other, and the reason is, because it does not fall within the ordinary routine of his duty; but is of such a nature as demands consultation and deliberation. The ordinary repairs of roads, bridges, and opening roads, authorised by the court of quarter sessions, are classed with ministerial duties, and these may be performed by one. But when the question is as to the erection of a new bridge, the power does not exist unless with the assent of his associate. This would be investing one with authority which would lead to abuses, very detrimental to the township, and of which this case, as there is some reason to believe, is an example. Riser, one of the supervisors, was not consulted, perhaps because it was well known he would not sanction an expenditure the expediency and propriety of which was at least doubtful. Indeed it is proof that he expressly objected to it. It is said to be the custom for supervisors to act separately and independently in all matters appertaining to their duties as to roads and bridges, and that for their more convenient discharge the township of Lampeter was divided into two districts. This usage, as it is called, was under the act of 1802; and if true it can determine nothing as to the construction of the act of 1836. Nor can the usage of one township affect the construction of a general law, otherwise we would have as many laws as there are townships. It would be more to the purpose to show that the act of 1802 had received a judicial construction, authorising one supervisor to make such a contract. And further, that the acts were in these respects similar to these provisions. But so far from this being the case, in the one the power is committed to the supervisor or supervisors, and in the other to the *supervisors*; an alteration in the phraseology, certainly not unintentional, nor without design, to produce a difference in construction. When the power is granted to two or more, that it requires the consent of a majority is a principle, it is to be presumed, well known by the legislature. It is conceded that one supervisor cannot levy a tax to pay the debts contracted and expenses incurred for the township. The consent of both is required, because

VIII.—M

it is a deliberative, and not a ministerial duty. For the same reason such contracts cannot be made by less than a majority of the board, as this would enable one to involve the township in expenses which would render a tax inevitable. They are not permitted to do indirectly what they cannot do directly. When damage is done to a road or bridge by a freshet or other accidental causes, or when it needs repair from the natural progress of decay, there can be no objection to the necessary expenditure being authorised by less than a majority. This is an absolute duty, which calls neither for deliberation nor consultation. And besides, the omission to perform such a duty in a reasonable time, subjects the officers to a penalty. And further, a prudent economy renders an immediate attention to the state of the work indispensable; but this is not the case when a number of individuals call for an improvement which the public have been accustomed to do without, and the expediency of which may admit of question. An implied assent, which would bind a private corporation, does not, I apprehend, apply to a public trust. Those who deal with such agents must take care to have the express consent of all to whom the law has entrusted the transaction of the public business. The inhabitants of the township whose interest must be protected, have a right to the counsel and judgment of all to whom such trusts are committed. The suit was brought on a contract for work, labour, and materials, &c., in the erection of a bridge built across Mill creek, in Lampeter township. It was truly supposed by the inhabitants and the supervisors, to be a bridge which required more expense than was reasonable the township should bear. On a petition, therefore, of a number of the inhabitants, the court and grand jury adjudged a bridge necessary. In pursuance of the recommendation of the court and jury, the commissioners approving of the same entered into a contract for the erection of the bridge. It was erected, approved of in due form of law, paid for out of the county fund, with the aid of some private contributions, and must, notwithstanding the private subscriptions, be taken as county property. It belongs either to the county or the township, for undoubtedly the individual contributors can have no pretence to claim; and, as between those claimants, it must, upon every principle of justice, be adjudged to the county, with whose funds it was at least in part erected. This part of the case is very clear; but the doubt is, whether the additional wing-wall was part of the bridge. The evidence, however, shows that it was all one structure, built at the same time, although under another contract and firmly knit together. It is difficult to split it into parts, and to adjudge that twenty feet is, and that the remainder is not a constituent part of one whole. One of the plaintiff's witnesses says, that wing-walls, when they are connected with the bridge, are considered part of it, and that when they are necessary, (as they were here,) they are always connected with it. But whether this was a wing-wall or an embankment can make no difference, for in either

[Cooper and Grove v. Lampeter Township.]

case it would be a county and not a township burthen, if the extension were necessary for the accommodation of the inhabitants in the use of the bridge itself. Those laws, which have in view the comfort and ease of travellers as well as the inhabitants of the respective townships, must receive a liberal construction so as to carry out the views of the legislature, which would not be according to their spirit and intent by limiting the expense .of the county, who are most able to bear such a burthen, to what might strictly or technically come within the description of a bridge.

It is the business of the commissioners to construct a passage way over the stream, in such a manner as to promote the ease and safety of the traveller; and it is but little consequence whether this be done by a wing-wall or an embankment. This must of necessity be left to the judgment of the commissioners, subject to the penalties prescribed in the act. And this view of the case receives countenance from The King *v.* The West Riding of York, 7 *East,* 588. It is there held, that by the common law declared and defined by the statute 22 *H.* 8, c. 5, and subsequent acts, where the inhabitants of a county are liable to the repair of a public bridge, they are liable also to repair to the extent of three hundred feet of the highway at each end of the bridge. Lord Ellenborough, who delivered the opinion of the court, says, I consider it as having been laid down long ago by Lord Coke, that the three hundred feet of highway at the ends of the bridge are to be taken as part of the bridge itself, being in the nature of the thing intimately connected with it, and the exact limits difficult in some cases to be ascertained from the continuation of arches beyond the sides of the river. The statute of *H.* 8 meant to define the limit, which perhaps was uncertain at common law; but the statute still proceeds upon the assumption that there existed a common law liability of the county to repair the highway at the ends of the bridge, as well as the bridge itself, as appendages to it. All the authorities go to show that our statute does not prescribe the precise limits, but still that there is an obligation upon the county to keep up and repair the highway beyond the immediate structure of the bridge, will not admit of doubt, either in the reason of the thing, or on the weight of authority. What the extent of their liability may be, must depend upon the peculiar circumstances of each case, or the nature of the ground and other matters which are not susceptible of being reduced to any precise rules.

In this case, the whole work, including the exterior of the wing-walls, was inspected by men appointed for that purpose. It was passed upon by them as one structure, and as such was approved by them. The question then resolves into this: Can one supervisor use the township funds for county purposes? A proposition which it is only necessary to state to insure an answer in the negative. The commissioners, it seems, deemed a bridge with a wing-wall twenty feet long, sufficient for every useful purpose. One of the

[Cooper and Grove v. Lampeter Township.]

supervisors, with others who were not altogether disinterested, were of a different opinion. They entered into the contract without and in opposition to the will of the other supervisors. Under these circumstances, there is nothing of which they can justly complain. This was in no sense a ministerial duty, but one which in every point of view required consultation and deliberation. It should have been decided by them as a board whether the extension was necessary, whether it was a township or a county expense; and the contract itself for the work should have been submitted to the judgment of both supervisors. We are of opinion for this reason that the judgment should be affirmed.

Whether the township would be bound, if the contract had been made by the supervisors, is a point not altogether so clear. The act vests a discretion in the supervisors, and if on consultation they have determined that this was an expense which it was proper the township should bear, it may be doubtful whether their incorrect judgment should not be made to bear upon *their* principals, rather than on the contractors, who were not bound *to* examine the correctness of their decision. It may admit of question whether the remedy would not be the ordinary one, the loss of the confidence of their constituents, for an unwise and unskilful exercise of a public trust.

Judgment affirmed.