## The Commonwealth *ex relatione* Hall *against* The Canal Commissioners.

A power of a private nature must be executed by all to whom it is given:— but a power of a public nature may be executed by a majority. The criterion seems to be, not so much the character of the power or of the act to be done by virtue of it, as the character of the agent appointed for the performance of it.

An authority committed to several as individuals, is presumed to have been given to them for their personal qualifications, and with a view to an execution of it by them all.

A vacancy in the board of canal commissioners by the death or resignation of one of its members would not cause a suspension of its functions to the detriment of the public; and a majority of them would constitute a quorum for the transaction of public business.

THIS was an application by Elizabeth Hall for a rule to show cause why a mandamus should not issue to the canal commissioners of Pennsylvania requiring them to pay the sum of two thousand five hundred dollars to the petitioner, being the amount of damages awarded to her by the board of appraisers for injury done to her lands by reason of the construction of the canal.

On the 24th of August 1835, Elizabeth Hall made an application to the canal commissioners for the payment of damages done to her land, and they offered to pay her 200 dollars in full, which she refused, and appealed to the board of appraisers, who, on the 6th of September 1838, made a report in her favour of two thousand five hundred dollars; this report was signed by two only of the three appraisers, the third having previously resigned, and no appointment had been made in his room. This report was made to the canal commissioners on the 6th of November 1838, and they ordered the amount to be paid by the superintendant. The money was not paid.

On the 5th of July 1839, a new board of canal commissioners having been constituted in the meantime, the subject came before them, and they submitted the question to the attorney-general, whether the award of the appraisers, as the board was then composed of but two members, was legal and binding upon the state? —who gave them the following opinion:

[The Commonwealth *ex rel.* Hall v. The Canal Commissioners.]

" It is my opinion, founded on a well known common sense rule of construction that alone can guide us in the interpretation of laws, that the three individuals designated as a board of appraisers must act in every case, though I think the decision of two would be valid. It will of course follow that the act of two only in the absence of the third, is not an act of the board of appraisers constituted by law, and cannot, as such, be executed. I know of no authoritative construction given to this section of the act of assembly under consideration, unless it be one or two instances of legislative construction, which coincide with the opinion here expressed. I feel my views on this subject strengthened in no small degree by the consideration that this mode of assessing damages by the instrumentality of a board of appraisers, is a statutory innovation on the judicial system of Pennsylvania, and fixes a standard for the ascertainment of the rights and injuries of the citizens, unknown to the jealous genius of the common law. In such case, I consider it a safe and salutary rule of interpretation to hold these tribunals which form exceptions to the general system to a strict adherence to the laws by which they were created and endowed with power.

" If further reason be needed to sustain this construction, it may be found, I think, in the case of Broad Street Road, 1 *Serg. & Rawle* 444, wherein the very principle involved in the present inquiry, was decided by the supreme court of this commonwealth in perfect accordance with the views above explained.

" After a careful examination of this subject, I cannot entertain a doubt of the result, should the determination ever be submitted to that tribunal."

Whereupon, on motion it was resolved that the several reports of the board of appraisers of damages, made and signed by only two members of the said board communicating to the canal commissioners their awards for payment, be referred back to the board of appraisers for re-examination and decision according to law.

The canal commissioners made the following answer to the petition.

"In the supreme court of the commonwealth of Pennsylvania, in and for the middle district, of M. T. 1840.

" In the matter of the rule granted upon Edward B. Hubly, William F. Packer and Hugh Keys, canal commissioners of the commonwealth of Pennsylvania, at the instance of Robert C. Hall, attorney in fact for Elizabeth Hall, on the 22d of June *ultimo*, to show cause why a mandamus should not issue in accordance with the prayer of the said Elizabeth Hall, set forth in a certain petition filed in said court on the day of granting said rule.

"And now, to wit, July 2d A. D. 1840, the said Edward B. Hubly, William F. Packer and Hugh Keys, canal commissioners as aforesaid, come here into court by their attorney, Ovid F. Johnson, and in obedience to said rule, for cause show, to the honourable the chief justice and the associate justices of the said supreme court, the following reasons against the making of said rule upon

[The Commonwealth *ex rel.* Hall v. The Canal Commissioners.]

them absolute in this case. The said canal commissioners annex to this answer as a part thereof, the proceedings of the board of canal commissioners, together with the report made to the said board by the appraisers of damages on the appeal of the said Elizabeth Hall, as set forth in her said petition to the supreme court, for which report it is manifest that but two of said board of appraisers viewed the premises of the said Elizabeth Hall, or joined in the award of damages, and report made thereupon to said canal commissioners. And further, the said canal commissioners state to the court, that, at the time when the premises of said Elizabeth Hall were reviewed, and the award of damages made, as the same purports to have been, a full board of appraisers was not in existence, H. Harris having resigned on the 28th day of August A. D. 1838, and no successor was appointed in his place until the 19th day of September following thereafter.

"And also the said canal commissioners show to the court here, that in accordance with the uninterrupted usage and practice of the board of canal commissioners, and board of appraisers, from the passage of the act of assembly, creating said appraisers on the 6th of April 1830, up to the present time, with the exception, as they believe, of the cases referred to in the annexed proceedings, it has been deemed indispensably necessary, that the three individuals composing the board of appraisers, under said act of assembly, should be convened and act upon each and every case, either unanimously or by a majority, to render their proceedings valid and legal.

"And further, the said canal commissioners do not believe that a writ of mandamus is the only specific remedy afforded by the law to the said Elizabeth Hall for the recovery of her damages suffered or alleged to have been sustained in this case, but they do believe that they have afforded her a more appropriate remedy, by referring her said case back to the board of appraisers, to be acted upon in conformity to law. And they state to the said court here, that the said board of appraisers has awarded to her in the premises for her damages sustained, the sum of four hundred and eighty dollars, which said sum the said commissioners are ready and willing to direct to be paid to the said Elizabeth Hall, when she demands the same. All of which said matters set forth in this answer, the said canal commissioners, Edward B. Hubly, Wm F. Packer and Hugh Keys are ready to verify as the court shall award.

"Wherefore they pray that the said rule upon them may be discharged, and they be dismissed from the said court, without further answer."

Upon the foregoing facts, the question submitted to the court was:—Whether the adjudication of the appraisers of the 6th of September 1838, submitted to the canal commissioners on the 6th of November 1838, and then approved by them, is final and conclusive, and entitles the applicant to the amount of the damages thus assessed?

·[The Commonwealth *ex rel.* Hall v. The Canal Commissioners.]

*Watts*, for the rule.  By the act of the 6th of April 1830, the governor is required to appoint three individuals as a board of appraisers, to whom all appeals shall be made by persons who may be dissatisfied with the amount of damages offered by the canal commissioners, and it shall be the duty of the said board of appraisers justly and equitably to assess the damages sustained by such person, in the manner directed by the existing laws, and whose determination thereon shall be final; and they shall make a record of their proceedings, a copy of which shall be delivered to the canal commissioners to be by them carried into effect according to law." "They shall take an oath to execute their duties with fidelity."

Under this act, the characteristic features of the appraisers are, that they are constituted a "board" a *quasi* corporation; their duties are of a public nature; their jurisdiction is appellate; and they keep a record of their proceedings.

It is readily conceded that where powers are granted to several persons to transact private business, the rule is, that all must join in the execution of the power.  But this rule was never applied to public business of a judicial nature, nor to public business of a deliberative nature, though not strictly judicial, nor to cases where powers are given to corporate bodies.  In the case of the King *v.* Beeston, 3 *Term Rep.* 592, this principle is fully recognised.  By the statute of 9 *Geo.* 1, chap. 7. sect. 4, the churchwardens and overseers of the poor, with the consent of the major part of the parishioners, were authorised to contract; fewer than the whole of the churchwardens and overseers did contract; and Lord Kenyon, speaking of the validity of that contract, said, "that although the churchwardens were not a corporation, yet in common understanding, what is to be done by the churchwardens and overseers, is satisfied by being done by a majority."  The same principle is recognised in the case of Withnell *v.* Gartham, 6 *Term Rep.* 396; and in the Attorney-General *v.* Davey, 2 *Atk.* 212.

But it seems to me that these doctrines are abundantly settled by our own courts.  The act of the 26th of February 1817, authorized the commissioners of Allegheny county to purchase a lot of ground; the contract was made by two, and in an action upon it, the court held the contract binding upon the county and upon the individual contracted with, on the ground that it was an act of a public nature which a majority might do.  And Chief Justice Tilghman, in delivering the opinion of the court says, "that where power is given to commissioners by their general official name, it must be supposed that such powers were to be executed by the board," and "that the words or a 'majority of them' are but surplusage."  "I have no doubt of the power of a board of commissioners consisting of two to act in this business.  In the case of M'Cready *v.* Guardians of the Poor, 9 *Serg. & Rawle* 94, Justice Duncan, in delivering the opinion of the court, says, 'Whether the statute expressly

IX.—2 P*

authorizes a majority to act, or is silent, the principle to be extracted from the numerous cases on this head is, that where a number of persons are entrusted with powers not of mere private confidence, but in some respects of a general nature, and all are assembled, the majority will conclude the minority.' To this I would add, if regular notice be given to all, the majority when they have met, become just as competent to decide, as if the whole had met, and in contemplation of law it is the act of the whole." So also in the case of Slate v. Delesseline, 1 *M'Cord's Rep.* 52, Justice Nott says, " I think it is now well understood, that where a trust is of a public nature, a majority may act for the whole." " The constitution requires a majority to constitute a quorum to do business, and I presume that rule would have been adopted if it had been silent on the subject." In the case now under consideration, there is no private confidence reposed; the appraisers are a public body constituted by statute *eo nomine*, and not *nominatim*, the party injured has no control over their proceedings, has no means of compelling their attendance, nor of fixing the time when they shall attend, nor indeed is there any provision whatever for the appearance of the party before them, nor the mode of presenting his appeal to them. They adjudicate in their own way at their own time and make their own record of it, which they have transmitted to the commissioners for payment. It can not now be inquired into whether that record was made by the consultation of the whole or a majority of the board: it is enough to know that a record has been made of the judgment of the board, in favor of which every presumption and intendment must be made.

*Attorney-General Johnson*, against the rule, cited the following cases in support of his opinion. Chardsford Turnpike, 5 *Bin.* 481; Broad Street Road, 7 *Serg. & Rawle* 444; Corn v. Snyder, 2 *Watts* 420; Commissioners of Allegheny County, 6 *Serg. & Rawle* 170; 13 *Petersdorff's Abr.* 444, tit. Powers; Grendley v. Barker, 1 *Bos. & Pul.* 228; Resolutions of the 10th of April 1832, and of the 5th of May 1832, *Pamph. Laws* 636, 642.

The opinion of the court was delivered by

Gibson, C. J.—It is usually said that a power of a private nature —that is, a power to do a private act—must be executed by all to whom it is given; but that a power of a public nature, or to do a public act, may be executed by a majority. That there is a distinction, is undoubted; but that the specific ground of it is to be found in the nature of the act, is not quite so clear. In Withnell v. Gartham, 6 *Term Rep.* 388, a power to appoint a *private* charity which had been delegated by a testator to the vicar and churchwardens of the parish, was held to have been well executed by a majority of the churchwardens, because they were a *quasi* corporation; while, on the other hand, an order of affiliation was quashed

in The Queen *v.* West, 6 *Mod.* 180, because it was founded on an affidavit made before only one of the justices, though the act of taking it was certainly of a public nature. If then, the general rule is as it is usually stated, these two cases must be excepted from it. The criterion, however, seems to be not so much the character of the power, or of the act to be done by virtue of it, as the character of the agent appointed for the performance of it. Perhaps the result of the cases is, that an authority committed to several *as individuals,* is presumed to have been given to them for their personal qualifications, and with a consequent view to an execution of it by them all; but that where it is committed to them as a body, there is no presumption in the way of the usual method of corporate action by a majority. In the case of the Baltimore Turnpike, 5 *Binn.* 481, viewers appointed by the quarter sessions to assess damages done to the soil by a turnpike company, were held to be such a body. That case is identical with the present, except that it is not near so strong, inasmuch as the official and *quasi* corporate character of the canal appraisers, keeping, as they must, a record of their proceedings, having succession, and being called a board in the act by which they are constituted, is more distinct than that of viewers of damages who become *functi officio* by performance of the single act for which they were appointed. So, in the County Commissioners of Allegheny *v.* Lecky, 6 *Serg. & Rawle* 170, a power to purchase a site for a jail, was held to be well executed by a majority, having been given to the commissioners, not individually but collectively by their official title, and therefore carrying with it an apparent intent that it should be executed by them as a board. In the case before us, the appraisers could not have acted otherwise. The principle of execution by a majority was doubtless borrowed from the practice of corporations, with whom, as with every associated body, it is a principle of necessity; for it would, in most cases, be impossible to obtain the assent of all the members of a numerous assembly: and this, perhaps, is the consideration which lies at the root of the whole matter. In the Commissioners *v.* Lecky, it was said by the chief justice, that the rule which requires execution by all, has never been applied to public business of a *judicial* or of a *deliberative* nature; or to cases where powers are given to corporate bodies—all which is incontestable. But all judicial and deliberative bodies partake strongly of the nature of corporations. Every legislature is strictly a court; whence it is said by Sir Edward Coke, that the British parliament, consisting as it does of the king, lords, and commons, is the highest, most absolute, and most honorable court of justice in England; 1 *Inst.* 109 *a;* and I believe it is still customary in some of the eastern states to call a legislature the general court. County commissioners have always been at least *quasi* corporations; in which respect they differ from commissioners to take depositions, and from arbitrators chosen for their presumed fitness for the business committed to them, who,

[The Commonwealth *ex rel.* Hall v. The Canal Commissioners.]

where the contrary is not specified in the terms of their appointment, must all join. It may be safely said, then, that any duty of an aggregate organ of the government, may be performed by a majority of its members where the constituting power has not expressly required a concurrence of the whole. Now these appraisers were constituted a board for the performance of duties of a public, deliberative, and judicial nature: they were, in short, a tribunal of appellate jurisdiction. Though not apparent on the face of the return, it is conceded that there was a vacancy by resignation in the membership at the time of the assessment. But that is a fact which, instead of weakening the relator's case would strengthen it, and the possibility of its recurrence may make it a legitimate ground of argument; for it can not be supposed that the functions of the board would be suspended, to the detriment of the public, by the loss of one of its members. Private business might bear to be postponed till such a loss could be repaired, but public affairs are usually so urgent that they could not. Thus it was held in Townsend *v.* Wilson, 3 *Mad. Chan. Rep.* 361; S. C. 1 *Barn. & Ald.* 608; that the survivors of three trustees, to whom a power to sell as well as to fill up vacancies in their number had been given by deed, were rendered incompetent to act, by the death of one of them; and that their competency could be restored only by a new appointment. But in Doe *dem.* Read *v.* Godwin, 1 *Dowl. & Ryl.* 259, where Parliament had vested the prizes of a city lottery in five trustees by name, with power to fill up vacancies by death before the drawing and conveyance of the prizes (city lots) to the fortunate ticket-holders, it was held in ejectment that the conveyance of a prize by four of the five (one having died) was effectual and good. In every aspect, then, it appears that two members of the board are competent to constitute a quorum; and that an appraisement by it, thus constituted, is valid.

As the parties desire no more than to have the opinion of the court on the point presented by the merits, we forbear to inquire into our power to issue a mandamus to officers who represent the government; or to make any final disposition of the rule.