## COMTH. OF PENNA. *ex rel.* C. TOWER *v.* D. P. THOMPSON, TREASURER, *et al.*

The legislature authorized three commissioners to lay out a state road in the counties of Dauphin and Schuylkill, with power to contract for the making of the same, and to receive from the township road tax collectors and county treasurers, all taxes already in, or thereafter to come into their hands, applicable to the making of said road; and also any money advances that might be made by individuals or companies. Moneys advanced to said commissioners were to be credited by them, and certificates issued for the amounts. These certificates were to be paid by the commissioners, appropriating thereto the taxes, which by the act, they were to receive from the collectors and treasurer, or, on presentation to the collectors, and request made, a credit of the amount of taxes was required to be entered by the collector on such certificates.

*Held,* that the collector held no such relation, as a public officer, to the holder of these certificates, as would authorize the issuing of a mandamus to compel him to pay money on them; and that he could not be compelled to pay taxes collected by him, applicable to said road, to any other parties than the commissioners named by the legislature.

Opinion of the court delivered April 28, 1873, by

PERSHING, P. J. This is an application for a writ of peremptory mandamus against the defendants. By an act of assembly, approved the seventh day of April, A. D. 1869, Daniel B. Althouse and Preston Miller, of the county of Schuylkill, and W. W. Jones, of the county of Dauphin, were appointed commissioners to view and lay out a state road from a designated point in Porter township, in the county of Schuylkill, through said township, to the town of Williamstown, in the county of Dauphin, with the power to follow the line of and adopt any existing public road or any parts of such existing public road in their route, and to vacate or reject such other parts thereof as they might see proper. It was enacted by the third section, that this road should be constructed at the expense of the individuals and companies owning or occupying lands through or contiguous or adjacent to which the said road should be laid out. This to embrace in said Porter township, all the lands north of the road up to the north line of said township, with this proviso : "That no such individual or company shall be compelled to pay or contribute for that purpose any further, greater or other sum than such road taxes as are or may be assessed at the rate and in common with the lands and property of others in the respective townships, upon their lands aforesaid or the property thereon ; but that all road taxes now due or which may hereafter be assessed upon such lands and the property thereon, by the supervisors of the respective townships in which said lands lie, shall, together with such other sums as may for that purpose be advanced by the said individuals or companies,

and which sums so advanced shall be credited on account of road taxes that may thereafter be assessed upon such lands and property, be appropriated and applied by the supervisors of the respective townships, to the opening and construction of said state road, and to no other purpose until said road shall be in good order for traveling with carriages and vehicles." P. L. 738. By a supplement to this act, approved the twenty-seventh day of April, A. D. 1872, the commissioners named, or a majority of them, were empowered and directed instead of the respective township supervisors, to take charge of and contract for the opening of the said state road, which was to be completed within ten months. And it was further enacted " that the said commissioners, or a majority of them, shall receive from the township road tax collectors and county treasurers, all taxes already in or hereafter to come into their hands, and any money advances that may be made by individuals or companies, which are applicable under said act, to the opening and construction of said road, and shall use and pay out the same in repaying any expenses incurred or advances or outlays heretofore made by any individual or company for the purpose, and towards making the road under their contracts, therefore, aforesaid and otherwise, and any individual or company liable to the expense thereof under said act, who has heretofore advanced or expended any sums, or who shall hereafter advance to said commissioners, or a majority of them, any sums to and for the opening and construction of the road, or of any portion or piece thereof, shall be credited with the same, and shall be entitled to and shall receive from the commissioners, or a majority of them, a certificate for the sums so advanced or expended, and each and all of such sums shall be repaid on each such certificate, with interest, through and by means of all the road taxes which are in and by said act directed to be appropriated and applied to the opening and construction of the said state road, either by said commissioners receiving and paying over road taxes on such certificates, or by the road supervisors or collectors of road taxes in the respective townships, crediting the taxes as they are hereby required to do, from time to time, and as requested by any individual or company, whose lands are liable on any such certificate or certificates, or by both such methods, until all such certificates are paid off, and the road is completed." P. L. 171.

The petition in this proceeding substantially sets forth the act of 1869 and its supplement, passed in 1872. The relator represents that he advanced a large sum of money for the making of this state road, that on the 28th day of January A. D. 1873, he held a large amount of certificates for such advances ; that he surrendered these to the amount of $1,940 to Preston Miller, one of the commissioners, and received therefor a check dated Pottsville, January 28, 1873, upon the Government National Bank of Pottsville for $1,831, drawn by D. P. Thompson, treasurer, to the order of said Preston Miller, who endorsed the same to

the relator, and at the same time paid him $109.42 in money; that the said D. P. Thompson is collector of road taxes and treasurer of the said township of Porter, and had collected the said sum of $1,940.42, which the relator believes was subject to be paid for the redemption of the certificates which the commissioners were authorized to issue. The relator further states in his petition that the said check for $1,831 was on the 30th day of January, A. D. 1873, presented at the Government National Bank of Pottsville, and payment thereof refused; that he is informed, and verily believes, that there is now on deposit at the said bank a large sum of money sufficient to pay the amount of the aforesaid check, which was collected by said D. P. Thompson upon and from taxes levied upon the lands and other property which were appropriated by said acts of assembly for the building of said road, and subject to the redemption of the aforesaid certificates, and prays for a mandamus to said D. P. Thompson and said Government National Bank to pay over to the relator the said sum of $1,831.

Upon the filing of the relator's petition the court awarded a writ of alternative mandamus. The several answers of D. P. Thompson and the Government National Bank were presented and filed on the 17th day of February, A. D. 1873. H. H. Huntzinger, the cashier, who answers on behalf of the bank, admits the presentation of the check mentioned in the petition of the relator, and that payment was refused in pursuance of prior instructions to that effect received from D. P. Thompson. The answer further states that, on the 22d of October, A. D. 1872, an account was opened with David D. Thompson, treasurer of Porter township, at which date he deposited in cash $855, and that, on January 2, 1873, he deposited $976; that said bank does not know of the transactions between the plaintiff and D. D. Thompson, or to which of said parties the money is properly payable, with a denial of the right of said plaintiff to further proceed against the bank. The answer of D. P. Thompson denies the right of the relator, as a private citizen, to prosecute for a public wrong such as that alleged in the petition, and alleges that the acts of assembly referred to are unconstitutional because they impose unequal burdens upon portions of the inhabitants and tax payers of Porter township, and divert the revenues to uses not intended by law, for the benefit and advantage of a few to the injury of the many; that the making and repairing of the roads is illegally taken from the legally constituted authorities and placed in the hands of irresponsible and improper parties, and that the relator, C. Tower, has a full and adequate remedy at law other than by mandamus. It is further alleged by the answer that the law has not been complied with in the laying out of said road, and that it is not yet completed, although the time for its completion has expired; that a number of the duties imposed upon the commissioners, as set forth in the answer, have not been performed by them. The de-

fendant states that he gave his check to Preston Miller, one of the commissioners, in mistake and in violation of law, as he was advised, and verily believes ; and that, upon being so advised, he stopped the payment of the check by the bank; that he has no knowledge, other than that derived from the petition, that the relator, C. Tower, holds a large number of certificates ; that he is informed and believes that said Tower procured the passage of said acts for his own private advantage; that the commissioners are the mere employees of Tower and acting under his instructions; that the relator is not injured, but that the compulsory payment of said check would inflict great and irreparable injury to said township of Porter.

On the 26th day of February, A. D. 1873, an amended answer was, by leave of the court, filed by the defendant, D. P. Tohmpson, in which it was alleged that the acts of assembly of 1869 and 1872, in reference to this state road, were unconstitutional, because they imposed a personal liability on the owners and occupants of lands whether seated or unseated, through which the road passed or contiguous or adjacent to said road, which personal liability would remain even after such ownership or occupancy ceased ; that whilst in Porter township all lands north of the road are embraced, it is uncertain what lands south of the road are embraced by these acts. That the taxes required to be paid for the construction of this state road will so nearly absorb all the taxes of the township of Porter, as to make it impossible, under existing laws, to provide means for opening new roads, or to keep in order those already made, by reason of which the public will be greatly inconvenienced and life endangered; and that exclusive of this state road, there are at present 31 miles of public roads in said township to be kept in repair. These reasons and others are stated at length in the answers.

To these several answers the relator filed a general demurrer, and prayed that a writ of peremptory mandamus be issued to the said D. P. Thompson and the Government National Bank, commanding them to pay over the moneys in their hands, raised by taxation, as in the proceedings mentioned.

The demurrer admits the answers to be true, so far as the facts contained therein are well pleaded. The first question, however, to be considered, is, does the petition show a clear, legal right in the relator, to the remedy he invokes against these defendants? Mandamus is a prerogative writ directed to persons, corporations or inferior courts of judicature, requiring them to do a certain specific act, as being the duty of their office, character or situation, agreeable to right and justice. *Ex parte* Crane, 5 Peters 190. It is granted only for public persons, and to compel the performance of public duties, Selw. 1105, *mandamus.* It is the absence or want of a specific legal remedy, which gives the court jurisdiction. There must have been a direct refusal to do that which the

mandamus is intended to enforce either in terms or by circumstances which distinctly show an intention in the party, not to do the act required. Selw. 1093—4. What then is the public duty, which D. P. Thompson as collector of road taxes, for Porter township, owes to the holders of the certificates issued by the commissioners named in the Act of 1869 and its supplement of 1872? To ascertain this, we must turn to these acts, and from their language, determine the legal relation of these parties.

By a reference to the Act of 1869 it will be seen that no provision was made for the repayment in money nor for the issuing of certificates to the individuals or companies who might make advances for the construction of the road but the sums so advanced were to be credited on account of road taxes that might thereafter be assessed upon the lands and property mentioned in the Act. The second section of the supplement conferred upon the Commissioners, or a majority of them, authority to receive from the township road tax collector and County Treasurer the taxes then in or thereafter to come into their hands applicable under the act to the opening and construction of said road, and also any money advances that might be made by individuals or Companies for that purpose. Parties expending money or making advances to said Commissioners or a majority of them were to be credited for the same and in addition were to receive a certificate of the sums so advanced or expended. These certificates were to be discharged, in the language of the Act, "through and by means of all the road taxes which are in and by said Act directed to be appropriated and applied to the opening and construction of said State road either by said Commissioners receiving and paying over road taxes on such certificates or by the road supervisors or collectors of road taxes in the respective townships crediting the taxes as they are hereby required to do from time to time and as requested by any individual or company whose lands are liable on any such certificate or certificates or by both such methods until all such certificates are paid off and the road is completed."

The duty, and the only public duty enjoined by law on the collector of road taxes towards the holders of certificates issued by the Commissioners is thus specifically stated and it is to be observed that this clause of the supplement is omitted from the petition of the relator.

Now it is not claimed that the relator or any one authorized by him at any time presented his certificates to D. P. Thompson as collector of taxes for the township of Porter and requested that the road taxes should be credited upon them, the only purpose for which they could be presented to that officer in the discharge of his public duties as we understand and construe this legislation. That this was a necessary prerequisite to the application for a mandamus against the collector is clear from many authorities as well as from the language of the Act of Assembly which gives rise to this controversy. Thus: It is an imperative rule of the law of mandamus that previous to the application for the writ to command the performance of

any particular act an express and distinct demand or request to perform it must have been made by the prosecutor to the defendant who must have refused to comply and both the demand and refusal must be shown on the affidavits made use of in support of the application.   Tapping on Mandamus 283, 3 A. & E. 217;   8 A. & E. 826, and this demand should not be couched in general terms but should accurately demand a performance of that which the defendant legally can and should do.   Tapping 284 notes. It must be made personally of those from whom the duty is required and is not sufficient unless made on all of them.   Tapping 284.   It must be made by the prosecutor personally or by some one duly authorized by him. Tapping 283.   These authorities are conclusive.   This legislation is of a nature that requires a strict construction.   D. P. Thompson as a collector of road taxes has no authority and cannot be compelled to pay over monies received by him, by virtue of this legislation, for taxes to any other persons than the Commissioners.   Upon the Commissioners is imposed the obligation of paying by means of the taxes received from the collectors and the County Treasurer the certificates which in pursuance of the powers vested in them by the Acts of 1869 and 1872 they have themselves issued.   The relator recognized this in presenting his certificates to Preston Miller, one of the Commissioners.   He saw proper to surrender them on receiving from Miller the check of D. P. Thompson with Miller as endorser, which check was regularly protested for nonpayment as was shown to the court on the argument.

That the relator is without a specific legal remedy, is not apparent to us.   Giving a check is no payment, unless the check is paid.   1 Hall N. Y. 56, 78; 4 Johns' N. Y. 296; 7 S. & R. 116; 2 Peck 204.   Nor does it operate as an assignment of the fund on which it is drawn.   Butterworth *v.* Peck, 5 Bosw. 341; Chapman *v.* White, 6 N. Y. 412.   The name of but one of the three commissioners named in the acts of 1869 and 1872, viz : Preston Miller, appears in all the papers before the court connected with this business.   In no instance under the provisions of these acts, can less than a majority of the commissioners legally execute the powers conferred, or discharge the duties imposed.   An authority given by the act of the principal to two or more persons, cannot be executed by one, though one dies or refuses.   Paley on Agency, 177.   Where, however, the authority is of a public nature, it may be executed by a majority.   9 Watts 466; 9 S. & R. 99.   The legislature invested these commissioners with extensive powers.   They were authorized to make contracts, to receive and disburse the public moneys, and this without giving any security, or any provision made for auditing and settling their accounts.   It is but reasonable, therefore, that the law be strictly complied with, and that unless at least a majority are shown to concur in any action taken in pursuance of the legislation from which their power is derived, such action shall be held invalid.

The constitutionality of this legislation was elaborately argued and many authorities were cited on both sides. We have not found it necessary to discuss this question in order to reach a decision. It is always with reluctance that the courts decide an act of the legislature to be in conflict with the fundamental law. We would not strain the rules of interpretation to sustain this legislation. An enactment which appropriates the great bulk of the taxes of an entire township to one road, leaving as is admitted by the pleadings, 31 miles of public roads to be kept up by a taxation too small for the purpose, must lead to one of two results; either these roads must go without repairs, or heavier burdens in the shape of taxes must be resorted to. This might accomplish indirectly what could not be done by direct means. Refraining from any decision upon the constitutionality of this legislation, we think it comes within the spirit of Judge Agnews' opinion in Washington Avenue, 19. P. F. S. 364. "Laws," says that distinguished jurist, "which cast the burdens of the public on a few individuals, no matter what the pretence, or how seeming the analogy to constitutional enactments, are in their essence despotic and tyrannical."

On the whole case we direct, that judgment be entered on the demurrer for the defendants.

Hon. *James Ryon*, for relator; *Hughes & Farquhar*, Esqrs., for Thompson ; *George R. Kaercher*, Esq., for Govt. Nat. Bank.

---

*Twenty-sixth Judicial District.*