GLIDDEN *v.* TOWLE.

In an action to recover one half of fees paid to fence-viewers, under section 14 of chapter 130 of the Revised Statutes, it is not necessary for the party to show that the application for the division has been recorded.

Such an action will not be defeated by its appearing that the application has not been recorded.

Where an authority is given to two or more individuals to do an act of a public nature, if all meet for the purpose of executing it, a majority may decide.

If three fence-viewers attend a hearing for the division of fences, a return, signed by two of them, is sufficient.

If no specific time is fixed in which a town officer is required to take the oath of office, mere neglect to take it does not, *ipso facto*, make the office vacant.

Where a fence-viewer, chosen in March, did not take the oath of office till July following, and it did not appear that any notice had been given him of his election, or that any one had been appointed in his stead—*held*, that the office was not vacant, and that he could legally act after having taken the oath.

If a party intends subsequently to avail himself of the want of official qualifications in a fence-viewer to make a division of fences, he must take the exception at the time of the hearing.

In order to give fence-viewers jurisdiction to make a division of fences, it is not necessary that there should be any positive disagreement between the parties. If they have not agreed upon a division and reduced it to writing, the fence-viewers may, upon application, make the division.

A division of partition fences cannot be shown by a prescription gained since the passage of the statutes of this State upon that subject, so as to prevent a division by fence-viewers.

Before an action can be sustained for one half of fees paid fence-viewers, for making a division of partition fences, the applicant must demand the same of the party sought to be charged. But a demand of a greater sum than is due will not make void the demand for what is due.

Several separate fences may be included in one application to fence-viewers for a division; and if they are separately and distinctly divided, it will be no objection to the legality of a part that others are improperly included in the application, nor any objection to the payment of fees for those legally divided.

After a jury had agreed upon a verdict, they requested the officer having them in charge to hand them some paper on which to reduce it to writing; and on receiving it, the verdict so agreed upon was reduced to writing accordingly. The officer, however, in complying with the request, accidentally gave them some sheets, with others, on which a portion of the plaintiff's testimony had been taken—*Held*, that the verdict could not be set aside on that account.

ASSUMPSIT, under the statute for one half of two bills of fees paid by the plaintiff to the fence-viewers, for two different divisions of fences between the plaintiff and the defendant, as awarded by the fence-viewers.

On the trial, it appeared that the applications by the plaintiff to the fence-viewers, for the divisions, were in writing, but were never recorded in the town records with the other papers in the cases. The plaintiff having satisfactorily accounted for not producing the original, was allowed to offer parol evidence of their contents.

The proceedings in the two cases of division were, one in August, the other in September, and about different fences.

In the first case, the notices to the parties of the hearing were signed by all three fence-viewers, but the subsequent proceedings and report were signed by two only. The defendant contended that these were not admissible in evidence, without proof showing whether or not the other fence-viewer was present and acted, or why he did not agree to and sign the report. The court ruled otherwise.

One of the fence-viewers, chosen at the annual March meeting, did not take the oath of office till July 26th following. The defendant objected that by this delay the office became vacant, and the party could not then be legally qualified. The court overruled the objection.

In the town records, produced to show the choice and qualification of fence-viewers, there was in the general record of the town-meeting a record of the choice of fence-viewers. In a space following this last record, and in the body of the general record of the meeting, was interlined by the same town clerk, a certificate of the qualification of one of the fence viewers, under the date of July 26th following. The defendant objected that, on account of this interlineation, the record was not admissible to prove the choice of fence-viewers, nor the certificate in that place to prove the

qualification of that one.   The court overruled the objection.

It subsequently appeared that all the fence-viewers assumed to act in the office, and did so act in these cases, without any objection to their competency by either of these parties, both of whom appeared before them.

The defendant contended that it was necessary to show that there had been some disagreement between the parties about division of the fences, in order to give the fence-viewers jurisdiction and authority to make a division.   The court ruled otherwise, and rejected evidence, offered by the defendant, to prove that there had been no such disagreement.

The defendant offered evidence to prove that for more than twenty years prior to these proceedings, the parties had each, respectively, without any dispute, maintained the same separate and distinct portions of these fences between them, as showing a division by prescription, and, therefore, the fence-viewers had no authority to make division.   The court rejected the evidence.

Prior to the commencement of this suit, the plaintiff made a demand on the defendant for one half of the fees he had paid the fence-viewers, and the defendant refused to pay any thing.   The fees taxed by the fence-viewers, and paid by plaintiff, were more than their legal fees, and the plaintiff's demand on the defendant was for one half of the fees so paid.   The defendant contended that said demand was, therefore, invalid, and insufficient to maintain this suit. The court ruled that it was good and sufficient to maintain the suit to the extent of one half of the amount of the legal fees.

The application to the fence viewers, in the second case, was for division of several separate fences between the parties.   The fence-viewers made division of each fence separately, allotting a part of each fence to each party.   From the evidence, it appeared that the division as to one or two of the fences, was not legal, on account of the defendant not

being the owner or occupant of the adjoining land. The defendant contended that the whole proceedings, in that case, were, therefore, void, and so he was not liable for any of the fees. The court ruled that he was liable for one half of the legal fees, on the division of the fences properly made ; for one half of $3, the legal fees of the three fence-viewers for one day.

It was agreed by the parties that the jury should return a special verdict. A verdict was, therefore, returned, finding for the plaintiff, for one half of the legal fees, according to the instructions of the court in each case. Whereupon the defendant moved that the same be set aside and a new trial ordered, on account of error in said proceedings and rulings of the court, and further, on account of papers improperly in the possession of the jury, when they retired to their room.

The case was committed to the jury at the close of the afternoon, and they retired to their room.

On inquiry by the court, it appeared that, late in the evening, the jury having agreed upon a verdict, requested the attending officer to furnish some paper on which to reduce it to writing, and return under seal to the court, as had been agreed by the parties. He accordingly gave them some sheets, which, in the darkness, he found in the courtroom. The verdict before agreed upon was thereupon reduced to writing, and returned to the court. But among the sheets of paper thus furnished by the officer, were a portion of the minutes of the evidence in the case, taken by the plaintiff's counsel during the trial. The court being fully satisfied that the above was merely by accident, refused the motion to set aside the verdict on that account, to which the defendant excepted. And it was ordered that this case be transferred to the superior court of judicature, for the determination of the questions arising therein.

*Wiggins, Wheeler* and *Kimball,* for the defendant.

1.   The applications to the fence-viewers were never re-corded in the town records, and, in this respect, the record and proceedings were materially and fatally defective, and parol evidence to show their existence and their contents was not admissible, and could not supply the defective record.

The applications to the fence-viewers must be recorded before the division made by them can have force.   Rev. Stat. ch. 136, § 3.

The application to the fence-viewers, mentioned in section 3 of chapter 136 of the Revised Statutes, upon which they are authorized to make division of fences, must be an application in *writing*.   Rev. Stat. ch. 136, § 15.

The words of the third section are—" If the parties shall not agree upon a division, the fence-viewers of the town, upon application, shall make such division, which, being recorded in the town records, shall be of the same force as a division made by the parties, and a copy of such record shall be evidence."

From the language of this section, it is manifest that no division made by the fence-viewers can bind the parties, or have any force, until whatever the statute requires should be made matter of record has been recorded.

We think it clearly manifested not only in this section, but throughout the whole chapter, that whatever is neces-sary to give the fence-viewers authority to act, and to give validity and force to their acts, must be made and consti-tute a part of the record in the case.   And this is the gen-eral rule of law in relation to all inferior jurisdictions, whose proceedings are subject to the revision of higher ones. Now, in this case, there must be an application, in writing, before the fence-viewers can act; after such application has been made, they must give notice, in writing, to the other party interested, (*Ib.* ch. 136, § 13;) they shall be sworn that they have acted impartially, uprightly, and to the best of their judgment, (*Ib.* ch. 136, § 16;) they shall reduce

their decision to writing and sign it, and they shall cause a copy thereof to be given to each of the parties within a week, (*Ib.* ch. 136, § 13.) All these are requirements of the statute ; they must be followed to give effect to the proceedings of the fence-viewers. The statute does not, in terms, require that any one of these requirements should be recorded, yet the language of the third section, we think, too evidently means that all of them shall be, to admit of any other construction. And what reason can be given why any one of them shonld be recorded, which will not with equal force be applied to all ?

Especially should the application to the fence-viewers be recorded, because it is the foundation of their authority and action. This doctrine is sustained directly by our own courts, in reference to highways laid out by selectmen, and it is difficult to discover any sound distinction between these cases and the proceedings in the case at bar. *Pritchard* v. *Atkinson*, 3 N. H. Rep. 335. The question settled in this case arose under the statute of February 8, 1791, which gives authority to selectmen to lay out highways, " on application made to them." Our present law, authorizing selectmen to lay out highways, differs only in using the word petition instead of application ; both use, substantially, the same language in reference to the record which they shall cause to be made. The doctrine established by the case cited is, that the application to the selectmen must be in writing, and when a road is laid out, the application should be recorded as the foundation of their doings. The record was merely a record of the laying out, and this is held insufficient. This case is cited, though not upon this point, in *Wiggin* v. *Exeter*, 13 N. H. Rep. 307.

The doings of selectmen, in laying out highways, must be recorded. *Hardy* v. *Houston*, 2 N. H. Rep. 303.

It seems to us that this position is further sustained by the statute itself. Section 15 requires that the application shall be in writing, &c. Why in writing, if it it is not to

be preserved and recorded? If, as soon as it is given to the fence-viewers, they may destroy it, and parol testimony afterwards be received, when their proceedings are called in question, of its contents, the objects of the statute, which are certainty and security to the rights of parties interested, are entirely frustrated.

Again, although a board of fence-viewers is not formally a court, and their decision is final and conclusive upon the parties, yet their proceedings may be impeached collaterally, and the rights of each party secured and protected. And when thus examined, the records of their doings must be so perfect and conclusive as to show, upon its inspection, not only that their proceedings have been regular, but that they had, in the first instance, jurisdiction of the subject-matter, in reference to which they have undertaken to act, and that their doings have been in conformity to the application.

This jurisdiction can only be given by an application in writing, and we insist that they must return to and spread upon the town records such application, with their proceedings, in order to make their division effective and valid. They cannot give nor sustain their jurisdiction by any other evidence than by the record itself, which they may make.

In proceedings under sections 2, 3 and 7 of chapter 71 of the Revised Statutes, Mr. Fox, in his Town Officer, (pages 190, 192,) says the petition, &c., should be all recorded, as in the case of a record of laying out a highway.

If, therefore, the view we have taken of this point be correct, no division of fences has been made which can have any force, and this action cannot be maintained. ·

2. It seems that only two of the fence-viewers acted at the hearing and signed the report. A full board of fence-viewers consisted of three persons; these were elected at the annual town-meeting. Now, although a majority may exercise the authority given to the whole board, yet we think. it should appear upon the record that there was a full board present at the hearing, or if not, which of them was present,.

or if not present, that the absent one was duly notified of the time and place of hearing ; or if all were present, why they did not act and concur in the decision which was made. From the case, it appears that only two were present; this did not constitute such a board as authorized a majority to act.

The common law rule is, that when an authority is to be exercised by public officers, all must meet, or be notified to meet, and when assembled, a majority may act; and our statute (Rev. Stat. ch. 1, § 13,) was intended manifestly to sanction and adopt it.

3.   But we contend that there was not a full board of fence-viewers in the town of Lee, at the time the division was made by two only ; that there could be no majority, nor action of a majority, within the meaning of the law, and that all the proceedings of the two who did act are null and void *ab initio*.

There was a vacancy in the office of fence-viewer, as to one of the board, which could be supplied or filled only in one of two ways.   Section 1 of chapter 36 of the Revised Statutes contemplates vacancies in town offices in various ways, viz. : neglect or refusal to accept, death, resignation, removal from town, insanity of the incumbent, failure to elect at the annual town-meeting, &c., &c., or in any other way ; and when vacancies thus occur the town may choose, at any legal meeting held for the purpose, and until that is done the selectmen are authorized (ch. 36, § 6) to appoint.

One of the fence-viewers who acted in this case was elected at the annual meeting, but did not qualify himself till the 26th day of July following, the day of the commencement of proceedings in the case at bar, more than four months after his election.   This was not accepting the office ; it was a refusal and neglect to accept, which, we say, it was the purpose of the law to reach, in the language of the first section of the chapter cited.   Neglect or refusal, for an unreasonable length of time, on the part of a person elected to a

Glidden *v.* Towle.

town office, after his election, to qualify himself, should be held and considered a non-acceptance, and sufficient evidence of a non-acceptance of the office, and make it the duty of the selectmen to appoint, if the town itself neglects to fill the vacancy. This doctrine rests upon the strongest grounds of public policy and public convenience. The business of a town cannot be conducted and managed, unless it has legal town officers to do it; and we think it very manifest, from our statutes, that they have been careful to make ample provision for having them all and always filled. Chapter 35 of the Revised Statutes clearly discloses this purpose of the law. Section 3 provides for notifying a person chosen to office in open town-meeting, and makes it the duty of such person, if present, immediately, in open meeting, to take his oath or declare his refusal, and imposes a penalty for neglect or refusal, &c. Section 4 makes it the duty of the town clerk, forthwith, after the choice of town officers, to notify the persons so chosen to appear and take the oath within six days from the day of notice; the constable must notify within four days, and make his return within ten days. Section 5 imposes a penalty upon the constable for neglect of his duty, prescribed in the preceding section, and section 6 imposes a penalty upon the persons chosen to office, who neglect, after notice, to qualify themselves, &c. Now take these sections, in connection with sections 1 and 6 of chapter 36, and it seems a reasonable construction to hold that neglect, on the part of a person chosen to office, to take the oath of office, for more than six days after notice, is equivalent to an express declaration of his refusal to accept it, and occasions a vacancy. He should certainly be held to qualify himself within a reasonable time. If, then, this be so in this case, there was a vacancy, which neither the town nor selectmen had filled; and if there was a vacancy, then two could not act; though they were a majority mathematically, they could not be legally, within the rule of the common law, which authorizes a ma-

jority in such cases to act. We think the opinion of *Woods*, J., in the case of *Palmer* v. *Conway*, 2 Foster's Rep. 148, fully sustains this view, and we refer to that case generally as authority.

The fact that the parties did not object to the competency of the fence-viewers, does not cure the difficulty, and would not authorize persons to act as fence-viewers who were not so, or give validity or force to their acts.

4. Our objection to the record produced is, that it had been altered without authority, and the insertion of the oath of one of the fence-viewers, taken July 26th, was an interpolation of the record of the annual March meeting, and made it a spurious record. It was attested as the record of the March meeting; the interpolation was of something done July 26th; the record, then, could not be a true one of what was done on either occasion. The oath taken should have been a distinct record, and it is no more recorded by being inserted in the body of the record of the March meeting immediately preceding the time when the oath was taken, than if it had been inserted in the body of the record of any other meeting. The oath was not recorded as the law requires, and the general record, attested by the town clerk, was not a true one, and was inadmissible to prove either of the facts for which it was introduced. The record could have been amended, upon application to the court, to conform to the truth of the facts, but the court will not tolerate the practice of town clerks amending or altering their records upon their own, or the suggestions of other parties. *Low & a.* v. *Pettengill*, 12 N. H. Rep. 337.

5. We contend that it is necessary, in cases of this character, in order to give the fence-viewers jurisdiction and authority to act, to show that there has been some disagreement between the parties prior to the time of the application. We rest this point upon the language of the second and third sections of chapter 136 of the Revised Statutes, and the reasonableness of the proposition itself. And it

is not inconsistent with the case of *York* v. *Davis*, 11 N. H. Rep. 241.

6.   We contend that the defendant had a right to show a division of the fences in dispute, by prescription.

Prescription to fence is allowed at common law.

A division established by prescription, ousts the fence-viewers of jurisdiction.

The following cases establish these points beyond all question:—*Rust* v. *Low & a.*, 6 Mass. Rep. 90; *York* v. *Dovis*, 11 N. H. Rep. 241; *Heath* v. *Ricker & a.*, 2 Greenl. 72; *Little* v. *Lothrop*, 5 Greenl. 327; *Binney* v. *Hall*, 5 Pick. 503; 1 Cow. 75, note a; 3 Wend. 142; 3 Hill 38; 4 Johns. 414; 15 Johns 220; 2 Johns. 357; 3 Kent's Com. 438.

7.   A demand on the defendant is necessary as a condition precedent to charge him.   He is only bound to pay one half when the plaintiff has paid the whole; but how can he pay, or offer to pay, until he has notice or knowledge that the other party has paid.   Upon the action of the fence-viewers there was no undertaking or promise, implied or expressed, on the part of the defendant, to pay them any thing, either for himself alone or for himself and the plaintiff. They had no claim upon the defendant, and the plaintiff could have no claim till he had actually paid them himself. There is no principle of law which would allow the plaintiff to pay the fence-viewers' fees, and bring a suit immediately against the defendant for one half, without notice or demand.   We think this is clearly the intention and meaning of section 14 of chapter 136 of the Revised Statutes.   But the general rule is well settled in a variety of cases.

The plaintiff cannot treat the defendant as in default, for not complying with the statute in this case, while withholding from him all sufficient means of information as to what he is called upon to do.   The condition, that is, payment of the whole, until it is communicated to the defendant, is wholly within the knowledge of the plaintiff, a secret lying in his own

breast, and he is bound to give notice before the defendant can be considered in any fault. 2 American Leading Cases 58, 59, 61, and cases there cited. See also *Lewis* v. *Paris*, 10 Johns. 285; *Cooley* v. *Betts*, 24 Wend. 203; *Downes* v. *Phenix Bank of Charlestown*, 6 Hill 297; *Watson* v. *Phenix Bank*, 8 Met. 217; *Lever* v. *Lever*, 1 Hill's Ch. Rep. 62, 67; *Williams* v. *Storrs*, 6 Johns. Ch. Rep. 353, 358; *Walradt* v. *Maynard*, Barb. S. C. Rep. 584.

The demand must be for one half of the lawful fees of the fence-viewers, and a demand for illegal fees is not sufficient, for illegal fees are not recoverable at law, with or without demand. In the case at bar, the plaintiff had paid illegal fees to the fence-viewers, and he demanded of the defendant one half, which he refused to pay. The demand itself was unlawful, and so was the payment, as regards the defendant, for the plaintiff must be treated in reference to these fees, as the fence-viewers would be. The claim was for a gross sum; the legal fees could not be separated or distinguished from the illegal ones, and if they could, it was not the business of the defendant to do so. The fees were unlawful, admitted to be so, and this vitiated the whole. The fees are prescribed by the statute; they could be and should be made certain. Defendant's liability to pay any thing was based upon payment of a legal sum, and notice to him of the payment. The object and purpose of the notice is to give him information of his liability and the extent of it, and if the notice or demand was for illegal fees, he was, to all intents and purposes, in the same condition as if he had had no notice. How can he pay, or offer to pay, unless he has notice and information of what the whole legal fees were? The demand, we contend, then, must be for the sum which the plaintiff is entitled to recover in law, not one half of what he may have paid the fence-viewers, but only one half of the legal fees to which they were entitled. It is out of the power of the defendant, ordinarily, to ascertain what the legal fees are, except from notice or information

from the plaintiff himself. If the plaintiff can bring a suit immediately upon demand, of any sum of money, no matter how large, it is manifest that the notice or demand is of no service whatever, for before the defendant can inform himself, and make a tender of one half the legal fees, an action may be brought and subject him to costs. And we contend, further, that if the fence-viewers demanded of the plaintiff a gross sum, made up in part of illegal fees, they could not recover any thing of him, and the plaintiff having paid them, stands in no better condition than the fence-viewers would.

8. We contend that the division of the fence-viewers, upon the second application, was void, because the division as to one or two of the fences was illegal, on account of the defendant not being the owner or occupant of the adjoining land. Their division of the several fences mentioned in the application, was based upon the ground that the defendant was liable to make and maintain a part of all the fences mentioned, and the division as to the parts legally divided may be entirely different from what it would have been had the whole been lawful, and standing good as to the whole, would have been equal and fair, taking all the fences mentioned in the application into consideration, but standing good only as to a part, may be very unequal and unfair.

The fees charged were for the whole services, in gross sum, for the unlawful as well as the lawful division; the charges for the lawful services could not be distinguished from those that were not lawful, and the whole judgment should, therefore, be void.

*Christie & Kingman,* for the plaintiff.

I. The statute now requires the application to the fence-viewers to be in writing, but does not require it to be recorded; and the practice has been not to record the application. Town Officer 321, (ed. of 1847.)

If recorded, the record would be but secondary evidence. The plaintiff having satisfactorily accounted for not producing the original, was entitled to introduce any secondary evidence of its contents.  1 Phil. Ev. 452.

But as both parties appeared before the fence-viewers, and submitted to their jurisdiction, they thereby waived any and all irregularities in the prior proceedings.

II.  A majority of any board of public officers may exercise the joint authority; at least may report their joint doings.  Comp. Stat. ch. 1, § 13.  And the case finds that all the fence-viewers did act in these cases.

III.  The statute requires only that the person chosen to any public office, shall take the oath before he acts.  It was so done in this case.  The delay may have been caused by the omission of the town clerk or constable to notify him of his election.  No presumption of a vacancy can arise until his refusal to serve is proved.

IV.  The record of the oath may be made by the town clerk, in any convenient vacant space on his records; there is no particular place assigned for the record of oaths.  In the present case, the town clerk, in making up the record, left a space, after recording the choice of the fence-viewers, in which to record the certificate of their oaths; and when the certificate was handed him, he inserted it in the place left for that purpose, under its true date.  This is a good record of the oath ; and being true in fact, how can it vitiate the record of their election ?

V.  The statute does not require that there should be an actual disagreement between the parties about the division of the fence.  All that is required to give the fence-viewers jurisdiction is, that there should be no agreement in writing, and an application to them by one of the parties.  York v. Davis, 11 N. H. Rep. 243.

VI.  We contend that, under our statutes, no prescription as to the division of fences can exist.  The agreement is to be an agreement in writing, and recorded in the town

records.   A prescription stands upon the presumption of a lost grant or agreement, but there can be no prescription of a lost record, and no division is valid unless recorded. Bouvier's Law Dict., Art. Prescription ; *York* v. *Davis*, 11 N. H. Rep. 243.

But however this may be, the offer of the defendant was made only in relation to the fences embraced in the first application ; and the verdict being special as to each case, if the ruling was erroneous in the first case, the verdict will stand good as to the finding on the second application, as far as this objection is concerned.

VII.   The statute gives each fence-viewer one dollar per day for his services ; if more were charged, it could be easily ascertained and rejected.   The demand for the whole sum charged was good for the sum actually due.   Both these points are fully settled in *Shirley* v. *Shattuck*, 4 Cush. 470.

VIII.   By the statute (Comp. Stat. ch. 142, § 15,) so many subjects may be embraced in each application as can be acted on at one meeting.   A single subject entitles the fence-viewers to one day's pay.   The addition of others, on which they could not properly act, could hardly deprive them of the fees justly due.

IX.   The accidental handing of the paper in question to the jury, cannot be a ground of objection to a verdict which had been agreed on before the paper came into their hands. It does not appear that the writing was ever seen by any of the jury.   It does appear that it was *not* considered by them.

EASTMAN, J.   By section 14, chapter 136, of the Revised Statutes, it is provided that " each fence-viewer shall be allowed one dollar per day for his services, to be paid by the party making the application, and he shall be entitled to demand and recover the one-half thereof of the other party, in an action of assumpsit for money paid for his use, unless, in the opinion of the fence-viewers, justice requires a different division of the costs, in which case they may so order."

Upon this section, the present action is founded, the plaintiff having paid the fence-viewers for making a division of certain fences between him and the defendant. The jury, under the rulings of the court, found a verdict for the plaintiff. To these rulings, a large number of exceptions were taken, and they have been argued at length, and with ability, showing, in a marked manner, the perseverance that oftentimes attends a litigation, when the amount at issue is but trifling.

By § 1, ch. 136, Rev. Stat., it is provided that "the owners of adjoining lands, under improvement, shall build and repair the partition fence between them, in equal shares." Section second provides that "any division of such fence, made by the parties in writing, and recorded in the town records, shall be forever binding upon the parties, and all succeeding owners and occupants of the land." And section third provides that "if the parties shall not agree upon a division, the fence-viewers of the town, upon application, shall make such division, which, being recorded in the town records, shall be of the same force as a division made by the parties;" and that "a copy of such record shall be evidence." The thirteenth section points out the course to be taken by the fence-viewers, in notifying the parties, attending the hearing, reducing their decision to writing, and causing a copy thereof to be given to each of the parties, within a week. And the fifteenth section provides that "every application to the fence-viewers shall be in writing," and that "one application may embrace as many subjects as, from the nature of the case, may be acted upon at one meeting."

This proceeding being one founded entirely upon the statute, a plaintiff must bring himself within all its substantial provisions, before he can recover the one-half of the money paid to the fence-viewers. Adjoining owners are, by the statute, bound to build and repair the partition fences between them. They may make a division by agreement, which being reduced to writing and recorded, will bind them

and all succeding owners. Or in case they do not agree, they may apply to the fence-viewers, and have the division made by them. The statute provides for only these two ways in which to make the division; by an agreement in writing and recorded, and by the fence-viewers. If done in either way, it binds the parties. But no other way does. A parol agreement is not effectual, and although it may control the parties for the time being, yet it does not prevent the fence-viewers from entertaining jurisdiction. To do that, the agreement must be in writing; and that is the only agreement which the statute recognizes. Whenever, therefore, no agreement in writing has been made, either party may apply to the fence-viewers for a division. *York* v. *Davis*, 11 N. H. Rep. 241.

The party, then, who wishes to have a division made by the fence-viewers, must make his application in writing. He must make it to the fence-viewers of the town in which both parties reside, or in which one resides, according to the circumstances of the case, as pointed out by the statute. They must be the fence-viewers of the town, either *de jure* or *de facto*, competent to act in the case; because none but fence-viewers are empowered by law to make the division, and the party cannot recover for money paid under the statute, to any other persons.

After a party has made his application in writing for the division, to the fence-viewers, it becomes their duty to notify and hear the parties, make the division, reduce it to writing, sign it, and cause a copy thereof to be delivered to each of the parties within one week. No further duty seems to be imposed upon the fence-viewers, unless we hold that, by implication, they are required to make a return of the division to the town clerk. The statute provides that the division being recorded, shall be binding, but does not designate the person whose duty it shall be to have it returned an d recorded. It is certainly not the duty of the fence-viewe rs or of the parties to record it, but of the town clerk; and not

his duty without compensation; and it would seem to be left to the parties to have the division recorded or not, as they may wish to make it effectual and binding for the future.    Or if returned by the fence-viewers, the town clerk may properly enough record it of his own motion.

The division being made, the party making the application must pay the fence-viewers, and may recover the one-half of the other party, by action of assumpsit, &c.

The division must be made upon the true line between the owners, otherwise nothing can be recovered for their services, for the fence-viewers have no power to determine the boundaries of the farms, and fix the lines.    If so, they could settle not only disputes in regard to fences, but all controversies in regard to lines.    They can divide the fences, but not the lands.    *Gallup* v. *Mulvah*, 4 Foster's Rep. 204.

With these general suggestions, we will proceed to examine, in their order, the several exceptions taken at the trial.

And, first, it was objected that the applications to the fence-viewers to make the divisions, were not recorded in the town records, with the other papers in the cases.    It is contended that this was necessary, not only to make the division binding, but to give the fence-viewers jurisdiction; and that without its being recorded, no legal division of fences has been made, and hence, no fees can be recovered.

Were the question before us whether the recording of the applications was essential to a good division, one which would bind not only the parties, but all succeeding owners, it might require to be examined with considerable care. The statute in terms, however, does not require the application to be recorded.    It says that "upon application," the fence-viewers shall make a "division," which, being recorded in the town records, shall be of the same force as a division made by the parties.    It is the "division" that would seem to be required to be recorded.    That is the important matter to have on record; the particular parts of the fence which are to be made and supported by each party.    When an

Glidden *v.* Towle.

application is made in writing to the fence-viewers of a town where both the parties reside, to make division of a partition fence, within that town, they at once have jurisdiction of the case. If the application is recorded at all, it is only after the division has been made; and it would seem that once having jurisdiction, a subsequent record could not affect that question either way. But even should we hold it necessary that the application, as well as the division, should be recorded, in order to make the division binding upon all, we do not think the recording of the application essential to the maintaining of an action for fees paid the fence-viewers. It is no part of the duty of the fence-viewers to make the record. They are not recording officers of the town, and have no control over the records. When they have finished their duties, and made the division, they are entitled to their fees, and they cannot be deprived of them by the failure of the town clerk to make the record. Being once entitled to them, the applicant who pays them can recover the one-half of the other party. This objection, therefore, must be overruled.

The second objection taken, viz., that it appeared that only two of the fence-viewers acted at the hearing, and signed the report, does not appear to be well founded in fact. The case finds that the notices for the hearing were signed by all three of the fence-viewers; that they all assumed to act in the office, and did so act, without any objection to their competency by either of the parties, both of whom appeared before them. It is true that the report in one of the cases was signed by only two of the board; but that was sufficient. Where an authority is given to two or more persons to do a private act, the act is valid to bind the principal, only when all of them concur in doing it. *Andover* v. *Grafton*, 7 N. H. Rep. 304; Story on Agency 44. But where the authority is to do an act of a public nature, if all meet for the purpose of executing it, a majority may decide. *The King* v. *Whitaker*, 9 B. & Cres. 648; *Grindley*

v. *Baker*, 1 B. & P. 229; *Baltimore Thrnpike*, 5 Binn. Rep. 481; Co. Litt. 181, b.; *Despatch Line of Packets* v. *Bellamy Man. Co.*, 12 N. H. Rep. 226. See also Rev. Stat., ch. 1, § 13; and *Palmer* v. *Conway*, 2 Foster's Rep. 144.

In the next place, it was contended that there was not a full board of fence-viewers in the town where the parties resided, at the time the division was made. Three were chosen at the annual meeting in March, but one of them did not take the oath of office till the 26th of July following, being the day on which proceedings were commenced for the division of these fences. The neglect to take the oath until that time, it is said, caused a vacancy in the office, which should have been filled by the town or selectmen.

The statute provides for the filling of vacancies in town offices, whenever they occur, either by death, resignation or refusal to accept, &c. Comp. Stat., ch. 38, § 1. But it does not fix the time in which an acceptance shall be signified, except in a few instances. A town treasurer must file a bond within six days after his election or appointment, and in default thereof, the office is vacant. Comp. Stat., ch. 36, § 5. And the same provision is made in regard to collectors and constables. Comp. Stat., ch. 38, § 4. But there is no provision of the kind in regard to fence-viewers. If they are present at the meeting, when chosen, and are notified of their election, they are required forthwith to take the oath, or declare their refusal. Comp. Stat., ch. 37, § 3. And in case they are not present, the town clerk is ordered forthwith to issue a notice to a constable, to notify them of their election, and to appear within six days and take the oath of office; the constable to give the notice within four days after its reception; and penalties are imposed in case of neglect to serve the notice, or to be qualified as stated. Comp. Stat., ch. 37, §§ 4, 5, 6. These are general provisions in regard to town officers; but they apply to fence-viewers in the same manner as though specifically enacted in regard to them. Were it made to appear that the fence-

viewer in question had been duly notified of his election, as required by the statute, and had neglected to take the oath of office, as therein stated, the selectmen might, perhaps, have treated his conduct as a refusal to accept the office, and appointed another in his stead. But nothing of the kind appears, and in the absence of any time being fixed in which a vacancy is declared to exist, or of any one being appointed in his stead, we see no objection to his taking the oath at the time he did, and of his entering upon the duties of his office.

It would have been better not to have had the record of the oath interlined; but still it appears to have been correctly and truly made by the town clerk, and we can discover no good reason for declaring it invalid.

But a complete answer to these exceptions in regard to this fence-viewer, were there no other, is to be found in the fact that the parties appeared at the hearing, and no objection was taken to his competency by any one. This precise point was settled in *Gallup* v. *Mulvah*, 6 Foster's Rep. 132, where it was held that, in an action brought to recover one-half of costs taxed by fence-viewers, in making a division of fence, it was no defence that one of the board did not take the official oath till the day appointed for the hearing of the application for the division; that if a party intends to avail himself of the want of such official qualification, in any subsequent proceedings relative to the division, he must take the exception at the time of the hearing; otherwise it will be waived. The same principle was applied in *Gilford's Petition*, 5 Foster's Rep. 124, and in *Goodwin & a.* v. *Milton*, 5 Foster's Rep. 458.

The next exception was, that it was necessary for the plaintiff to show that there had been some disagreement between the parties about the division, in order to give the fence-viewers jurisdiction and authority to make it. But this point is in effect settled by *York* v. *Davis*, 11 N. H. Rep. 241, before cited. The statute does not say that the parties must disagree, but " if they do not agree." If there be

no agreement in writing, under the second section, the fence-viewers have jurisdiction, under the third.

The next point is the only one in the case about which we have had any serious doubt. The defendant offered to prove that for more than twenty years prior to these proceedings, the parties had each respectively, without any dispute, maintained the same separate and distinct portions of these fences between them, as showing a division by prescription, and, therefore, that the fence-viewers had no authority to make the division ; and this evidence was rejected by the court.

At common law, a tenant or owner was not obliged to fence against an adjoining owner or occupier, except by prescription ; but he was compelled to keep his cattle on his own land, at his peril, and to prevent them from escaping. And where there was no prescription, but the tenant had made an agreement to fence, he could not be compelled to fence, and the party injured by the breach of the agreement had no remedy but by an action on the agreement. *Nowel* v. *Smith,* Cro. Eliz. 709. In the case of a prescription to fence, he could be obliged to fence by the writ of *curia claudenda,* sued out by the tenant of the adjoining close, who could also recover damages by that writ. Fitz. N. B. *Cu. Claud.* 297. This writ is not known in the practice of this State, and probably not in this country.

The authorities undoubtedly show that prescription to fence exists at common law, wherever and in whatever respects the matter is not regulated and fixed by special statutes. In this State, at a very early day, and probably before any rights by prescription to fence could have been acquired, statutes were passed requiring that the owners or occupants of lands under improvement, and adjoining, should build and repair the partition fences between them, in equal shares. The same statutes have provided for making divisions by agreement and by the action of the fence-viewers. And these statutes are the foundation of all the

Glidden *v.* Towle.

obligations that, at the present day, rest upon adjoining owners to make partition fences. They are imperative in their provisions that the fences *shall* be made in equal shares, by an equal charge upon both parties, and are substantially the same as those now in force. No law of prescription to fence in such cases has ever been used, practiced upon or adopted here, that we are aware of, so that the statute is the only law of the State governing partition fences; and unless the parties make an agreement in writing, which is recorded, the fence-viewers have jurisdiction. *York* v. *Davis,* 11 N. H. Rep. 241.

But even were rights by prescription acquired at common law, before the passage of our statute, yet the enactment of the statute would be the governing law in all future matters upon this subject; for, although the common law generally has been and is in force in this State, yet it may at any time be altered and controlled by an act of the legislature. These statutes, then, settle the matter that the fence-viewers have jurisdiction in all cases of partition, that have had their origin since the passage of the statutes, except when the division has been made in writing, as therein provided. If any rights by prescription existed at the time of their passage, and which might be held good, none could be acquired in that way thereafter. Especially could none be acquired by these parties, in the manner proposed ; for their rights must have commenced long subsequent to the enactment of the earlier statutes.

We have had some hesitation in regard to this point; but we think that the rule which we have endeavored to lay down is the true one; that although there may be prescriptions to make partition fences in this State, which the court would recognize, yet that they must have had their origin prior to the enactment of the statutes upon that subject ; and that the prescription doubtingly alluded to in *York* v. *Davis,* which was a decision made upon the statute of 1791, must have been such as existed prior to that statute. The:

defendant's proposition was to show that these parties had themselves, for more than twenty years, maintained distinct portions of the fences, as evidence of a division having been made, which would oust the fence-viewers of jurisdiction. Had the proposition been to carry the matter back for even fifty years, it would not reach the statute of 1791; and *York* v. *Davis* decides that unless that statute was complied with, in making a division by agreement, the fence-viewers would have jurisdiction.

We think the defendant's counsel is right in his position that there should be a demand for the fees paid, before an action can be sustained. The section of the statute upon which the action is founded, appears to contemplate it, and the justice of the case would seem to require it. But could a demand for a greater sum than the law allowed the fence-viewers vitiate the whole demand? Will any fault or mistake on the part of the fence-viewers, in making up their fees, or in the applicant in paying them, render void the demand for such as may be legally due? We think not. There is no penalty attached to the non-payment, which might require exactness and precision in the amount demanded, but simply an action of assumpsit given to recover the one-half. The defendant is in a situation to know what the legal fees are, as well as the plaintiff. He can readily obtain the items of the fence-viewers; and a tender of one-half of the legal amount would be a good answer to any action therefor. *Shirley* v. *Shattuck,* 4 Cushing's Rep. 470. The ruling of the court was that the demand was sufficient to maintain the suit to the extent of one-half of the amount of the legal fees, and the verdict was found in accordance with this ruling; and both were correct.

The ruling upon the next point was also correct. The application to the fence-viewers, in the second case, was for a division of several separate fences between the parties. A division was made of each separately. A part of these were illegal, because the defendant was not the owner or

occupant. The defendant contended that the proceedings in all the divisions were, therefore, void ; but the court ruled that those that were properly divided would stand, and the verdict was for those only.

By the statute, section fifteen, which we have cited, one application may embrace several subjects; and if, on examination, some of them shall be found to be improperly included, but the division is regularly, properly and separately made upon the others, as was done here, we see no reason why the fence-viewers should not be paid for those which are rightfully divided, and the applicant who pays for them recover of the opposite party accordingly.

The last exception taken to the verdict appears to have been abandoned in the argument; probably from the conclusion that it could not be sustained. In regard to this conclusion, we have only to say that we think it entirely correct.

*Judgment on the verdict.*